ESSEX SAVINGS BANK *v.* CHARLES I. LEEKER ET AL.

CHARLES I. LEEKER *v.* ESSEX SAVINGS BANK ET AL.
(2286)
(2287)

TESTO, HULL and BORDEN, Js.

Argued February 9—decision released June 5, 1984

*James M. Ullman,* for the appellants (Charles I. Leeker, named defendant in the first case, plaintiff in the second case, and Sandra Leeker, defendant in the first case).

*John R. McLain,* for the appellee (plaintiff in the first case, named defendant in the second case).

PER CURIAM. These are combined appeals[1] from two cases that were tried together: the first case by Essex Savings Bank (Essex) against Charles and Sandra Leeker to foreclose a mortgage on certain property; and the second case by Charles Leeker against Essex for breach of its fidicuary duty by paying out mortgage proceeds to the supplier of a modular home placed on the property despite a warning to Essex by Leeker not to disburse the money because the house placed on the lot was not complete.[2]

In July of 1978, Charles Leeker, a building contractor, entered into a contract with Gold Star Homes (Gold Star) for delivery of a complete modular home to a foundation site as part of a house construction contract between Leeker and Howard and Eleanor Sheldon. Essex provided a construction mortgage to the Sheldons in which it retained sole discretion as to the time and amount of any advances on the loan. On June 30, 1978, the Sheldons made an assignment irrevocably authorizing Essex to make payments to Leeker at Essex' discretion to the total amount of $44,950.00.

After delays, an incomplete modular home was delivered on September 15, 1978. On September 22, 1978, after inspecting the house the day before and determining that there was sufficient equity to justify the payment, Essex sent $22,640 of the mortgage proceeds

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] An exact duplicate of the complaint in *Leeker* v. *Essex Savings Bank* is filed as a counterclaim in the case of *Essex Savings Bank* v. *Leeker.*

directly to Gold Star. This was done pursuant to a letter from Essex to Gold Star dated August 18, 1978, assigning to Gold Star the right to directly receive $25,470 of the loan money: $22,640 upon the delivery of the house; and $2,830 upon completion. This arrangement was made at the request of Leeker. Leeker claims that the check for $22,640 should not have been sent because he had earlier warned Essex that the house had been delivered incomplete and that Gold Star was in poor financial condition. Essex denied both of these claims.

Gold Star never completed the house. The Sheldons moved into another house and on December 13, 1978, Leeker released the Sheldons from liability on the mortgage by assuming it. Leeker completed the house by drawing down the balance of the construction loan and investing his own money. Leeker claims $11,080.41 as damages in his suit against Essex for the extra work and materials needed because of the delivery of an incomplete modular home.

The trial court found (1) in effect, that Leeker did not warn Essex of Gold Star's poor financial condition, and that Leeker did not warn Essex to withhold the payment to Gold Star; (2) that Essex owed both Leeker and the Sheldons a duty to exercise reasonable care which is "the care which a banker under these circumstances should exercise"; (3) that the bank was required to adhere to the highest standards of honesty and integrity; (4) that it was Leeker and the Sheldons, not Essex, who chose to construct a modular home; (5) that Essex took every precaution in securing proper irrevocable assignments from the Sheldons and retaining control over advancements to be made from the mortgage money; and (6) that Essex exercised the due care and professional integrity required of it.

The court rendered judgment for Essex in both suits. Leeker appeals from both judgments claiming (1) that Essex breached a fiduciary duty when it disbursed payment on the construction mortgage loan to a subcontractor who had contracted to deliver a completed modular home, but actually delivered a mere shell of house; and (2) that the assignment of the mortgage loan payments which required the bank to make payment to Gold Star was not valid.[3]

Leeker claims that Essex held itself out as an expert in the field of modular home construction since it retained the sole discretion to disburse the construction loan advances. We are unaware of any authority which holds a lender on a construction mortgage to the standard of an expert in the modular home field solely by virtue of its discretion to make the advances on the loan. Although the bank retained discretion as to the time and amount of advances on the loan, it made periodic inspections of the construction prior to the advancements; and only after the modular unit had been on the premises for one week and inspected did it pay, at the request of Leeker, $22,640 to Gold Star. We agree with the trial court's conclusion that, under the facts of this case, the bank should be held to the standard of reasonable care.[4] See *Collins* v. *City National Bank & Trust Co.,* 131 Conn. 167, 170, 38 A.2d 582 (1944).

[3] Leeker also briefed the claim that the damages suffered by the mortgagor could be offset in the foreclosure suit by the mortgagee, Essex. With respect to the judgment of foreclosure in the first case, from which both Charles and Sandra Leeker appealed, the appeal is dismissed as moot since the stay was terminated, new law days were set and title has vested in Essex.

[4] We are not called upon to determine under what circumstances a bank as mortgagee may be found to have assumed a higher or more specific obligation concerning disbursement of mortgage funds. See *First Connecticut Small Business Investment Co.* v. *Arba, Inc.* 170 Conn. 168, 175, 365 A.2d 100 (1976).

Whether a bank has exercised its duty of care, however, is a question of fact for the trier. 10 Am. Jur. 2d, Banks § 303. The trial court's conclusion that the bank exercised the requisite degree of care was based on conflicting testimony. Leeker contended that Essex failed to heed his warnings about the financial circumstances of Gold Star or to take his advice about the incomplete state of the modular unit and that, therefore, the bank was negligent in disbursing the advancements. The bank and its witnesses denied these allegations in their testimony. Where there is conflicting testimony, we do not retry the facts or pass upon the credibility of the witnesses. *Dooley* v. *Leo,* 184 Conn. 583, 586, 440 A.2d 236 (1981); *Hallmark of Farmington* v. *Roy,* 1 Conn. App. 278, 281, 471 A.2d 651 (1984). Weighing the evidence and judging the credibility of the witnesses is solely within the province of the trial court and this court will not usurp that role. *Edens* v. *Kole Construction Co.,* 188 Conn. 489, 495, 450 A.2d 1161 (1982); *Gallo* v. *Gallo,* 184 Conn. 36, 38, 440 A.2d 782 (1981). The trial court chose to believe the testimony of the bank and its witnesses. We cannot say that under the circumstances the trial court's judgment was clearly erroneous.

The letter from Essex to Gold Star on August 18, 1978, states as follows: "This letter will act as an assignment to transfer $25,470.00 to Gold Star Homes in two separate disbursements as follows: (1) $22,640.00 Placement on foundation (2) $2,830.00 on Completion."

Leeker claims that this is an invalid assignment under General Statutes § 49-10.[5] Leeker's argument is wide

---

[5] General Statutes § 49-10 provides in pertinent part: "Whenever any debt or other obligation secured by mortgage, assignment of rent or assignment of interest in a lease, is assigned by an instrument in writing containing a sufficient description to identify the mortgage, assignment of rent or assignment of interest in a lease, as security for the debt or obligation, and that assignment has been executed, attested and acknowledged in the

of the mark. Section 49-10 applies to the assignment of "any debt or other obligation secured by mortgage," not to a written assurance that certain payments will be made out of the *proceeds* of the mortgage.

There is no error.

manner prescribed by law for the execution, attestation and acknowledgment of deeds of land, the title held by virtue of the mortgage, assignment of rent or assignment of interest in a lease, shall vest in the assignee."