## ERNST STEEL CORPORATION *v.* RELIANCE INSURANCE COMPANY ET AL.
## (4803)

SPALLONE, BIELUCH and STOUGHTON, Js.

Argued October 13, 1987—decision released January 19, 1988

*Wesley W. Horton,* with whom were *Susan M. Cormier* and *Hugh J. Lavery* and, on the brief, *Stuart J. Moskovitz,* for the appellants-appellees (defendants).

*J. Paul Kane,* with whom was *Jack L. Getman,* for the appellee-appellant (plaintiff).

SPALLONE, J. The defendants are appealing from the judgment rendered for the plaintiff in an action on a construction contract. The plaintiff has cross appealed from the denial of counsel fees on the defendant's counterclaim. We find no error.

The plaintiff, Ernst Steel Corporation (Ernst) commenced this action against the defendants Reliance Insurance Company (Reliance) and General Reinsurance Corporation (General) in their capacities as sureties for the defendant, Yonkers Contracting Company, Inc. (Yonkers). Ernst sought to recover $410,472.80, plus interest and attorney's fees, against Yonkers' sureties, due in connection with its performance under a subcontract with Yonkers for the fabrication and erection of steel structures required in the construction of certain bridges. Yonkers was under a general contract with the Connecticut department of transportation for the construction of a portion of Interstate Route 84. Ernst claimed payments and interest due under its contract with Yonkers as damages and also claimed counsel fees by application of General Statutes § 49-41a.[1]

---

[1] "[General Statutes] Sec. 49-41a. ENFORCEMENT OF PAYMENT BY GENERAL CONTRACTOR TO SUBCONTRACTOR AND BY SUBCONTRACTOR TO HIS SUBCONTRACTORS. (a) When any public work is awarded by a contract for which a payment bond is required by section 49-41, the contract for the public work shall contain the following provisions: (1) A requirement that the general contractor, within thirty days after payment to the contractor by the state or a municipality, pay any amounts due any subcontractor, whether for labor performed or materials furnished, when the labor or materials have been included in a requisition submitted by the contractor and paid by the state or a municipality . . . .

"(b) If payment is not made by the general contractor or any of its subcontractors in accordance with such requirements, the subcontractor shall set forth his claim against the general contractor and the subcontractor of a subcontractor shall set forth its claim against the subcontractor through notice by registered or certified mail. Ten days after the receipt of that

Although Yonkers was not named as a party in the initial complaint, the general contractor moved to be added as a defendant and filed a counterclaim against Ernst for damages allegedly caused by Ernst's delays in performing its contractual duties.

The trial judge presiding over this action endeavored to simplify the proceedings by bifurcating the trial into the issues of liability and damages. In a memorandum of decision dated February 15, 1985, the trial court found that the parties had not agreed upon a firm delivery schedule, that the plaintiff had satisfactorily performed its contractual obligations within a reasonable period of time and, therefore, Yonkers was not justified in withholding the sums owed to the plaintiff. Additional testimony was heard by the court on June 25, 1985, and a second memorandum of decision followed on October 13, wherein the court discussed its determination of damages. Ernst was awarded $343,387.15 plus interest at 1.5 percent per month for the work done under the contract[2] and $10,394.88 plus interest at

notice, the general contractor shall be liable to its subcontractor, and the subcontractor shall be liable to its subcontractor, for interest on the amount due and owing at the rate of one per cent per month. In addition, the general contractor, upon written demand of its subcontractor, or the subcontractor, upon written demand of its subcontractor, shall be required to place funds in the amount of the claim, plus interest of one per cent, in an interest-bearing escrow account in a bank in this state, provided the general contractor or subcontractor may refuse to place the funds in escrow on the grounds that the subcontractor has not substantially performed the work according to the terms of his or its employment. In the event that such general contractor or subcontractor refuses to place such funds in escrow, and the party making a claim against it under this section is found to have substantially performed its work in accordance with the terms of its employment in any arbitration or litigation to determine the validity of such claim, then such general contractor or subcontractor shall pay the attorney's fees of such party."

[2] The contract between the parties included a provision which imposed an interest charge of 1.5 percent on overdue accounts. The trial court found this provision viable, therefore, the contract rate, rather than the statutory rate of 1 percent, applies. *Little* v. *United National Investors Corporation*, 160 Conn. 534, 541, 280 A.2d 890 (1971).

1 percent per month[3] for work performed by Ernst outside of the contract.

The court also found that, pursuant to General Statutes § 49-41a, Ernst was entitled to collect attorney's fees, and therefore awarded Ernst an amount equal to 20 percent of the sums found to be due as of December 13, 1985. The plaintiff was not awarded, however, additional attorney's fees which it claimed it incurred as a result of defending against Yonkers' counterclaim. After the rendition of judgment, the defendants filed this appeal, and the plaintiff filed a cross appeal alleging error in the court's denial of its claim for additional counsel fees.

In January of 1986, the defendants filed a motion for rectification with the trial court. One month later, the plaintiff filed a motion for further articulation, largely in response to the defendants' motion, which set out in detail the necessary underlying facts to support the court's factual conclusions. Oral argument was held on both motions and the court issued an articulation which, for the most part, adopted verbatim the proposed findings filed by the plaintiff.[4]

I

In its statement of issues, the defendants initially claimed that the trial court's articulation should be reviewed by a standard more strict than clear error because of the court's wholesale adoption of the plain-

[3] A rate of 1 percent interest was applied, pursuant to General Statutes § 49-41a (b), to that portion of Ernst's work which was performed outside of the contract. Because this extra work was not originally contracted, the higher contract rate was found not to apply. See footnote 2, supra.

[4] In its articulation, the court stated that it had requested the defendants to also provide it with documentation similar to that filed by the plaintiff, detailing all subordinate facts the defendants believed they had proven. The defendants apparently either refused or were unable to so assist the trial court.

tiff's proposed articulation. The defendants abandoned this claim at oral argument in light of the recent disposition by our Supreme Court of a similar claim. See *Grayson* v. *Grayson*, 202 Conn. 221, 520 A.2d 225 (1987) (appeal dismissed on the ground that certification was improvidently granted).[5]

The defendants' remaining claims are that the court erred: (1) in finding that there was no agreement as to a specific delivery date; (2) in finding that the time within which the subcontract was to be performed was not of the essence; (3) in finding that the plaintiff performed within a reasonable time; (4) in awarding the plaintiff interest and attorney's fees under General Statutes § 49-41a; (5) in its computation of the damages awarded under the contract; and (6) in holding for the plaintiff on the counterclaim.

The first three of the defendants' claims of error, no matter how couched, presented or obfuscated, are merely attacks on the factual findings of the trial court. In essence, the defendant is asking us to retry these issues. We cannot. On appeal, the function of this court is limited solely to the determination of whether the decision of the trial court is clearly erroneous. Practice Book § 4061; *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981); *Ram Roofing & Sheet Metal Co.* v. *A.B.C. Plumbing & Heating, Inc.,* 2 Conn.

---

[5] It should be noted, however, that although our Supreme Court did not find it necessary to heighten the standard of review in those situations where a trial court's findings mirror those submitted by a party, the court found such a practice "deplorable." *Grayson* v. *Grayson,* 202 Conn. 221, 223, 520 A.2d 225 (1987). Our earlier review in *Grayson* had elicited the same reaction: "[T]he practice of adopting parties' proposed findings of fact invites error or sloppy analysis on the judge's part. More importantly, the appearance of justice is just as important as the reality, and a verbatim adoption of the facts proffered by one of the advocates invites a public suspicion of the trial court's decision. The perceptions by the public and by the losing litigant of our system of justice are surely not enhanced by such a practice." *Grayson* v. *Grayson,* 4 Conn. App. 275, 284, 494 A.2d 576 (1985).

App. 54, 56, 475 A.2d 341 (1984). It is the province of the trial court to "pass upon the credibility of witnesses and the weight to be accorded the evidence." *Edgewood Construction Co.* v. *West Haven Redevelopment Agency,* 170 Conn. 271, 272, 365 A.2d 819 (1976); *Essex Savings Bank* v. *Leeker,* 2 Conn. App. 98, 102, 476 A.2d 1071 (1984). It is not within this court's power to find facts or draw conclusions therefrom. As an appellate body, we review the factual findings below to ensure that they could have been legally, logically and reasonably found, thereby establishing that the trial court could reasonably conclude as it did. *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 676–77, 443 A.2d 486 (1982); *Hallmark of Farmington* v. *Roy,* 1 Conn. App. 278, 280–81, 471 A.2d 651 (1984). Our review of the record and transcripts discloses ample support for the court's findings and conclusions that the contract between Ernst and Yonkers contained no agreement which evinced a specific delivery date, that the time within which the contract was to be performed was not of the essence, and that the plaintiff performed its contractual obligations within a reasonable time. There is no merit to the defendants' assertion to the contrary.

Next, the defendants argue that Ernst was not entitled to interest and attorney's fees under General Statutes § 49-41a because the following requirements were not met: (1) there was no evidence of the amount Yonkers received in payment from the state for Ernst's work; (2) there was no amount due Ernst in 1979, Yonkers having paid Ernst all but its retainage, which under Yonkers' reading of the contract did not become payable until 1981; and (3) Ernst's demands in March and April of 1978 were premature and therefore improper.

That the aforesaid requirements were met was decided in the affirmative by the trial court. Our review of the court's decision is limited in scope to a determi-

nation of whether the facts found could legally, logically and reasonably be found. *Appliances, Inc.* v. *Yost,* supra. The matter of compliance with § 49-41a was in issue before the trial court; testimony was elicited and the arguments presented the parties' competing positions. The court ultimately resolved the issue in favor of the plaintiff. The court expressly found that all of Ernst's work was completed and accepted by the state as of December 21, 1978, that Yonkers received payment for all of Ernst's work, less retainage of 5 percent, on or before February 10, 1979, and that Ernst made a proper demand on April 10, 1979, by registered mail which was received by Yonkers on April 13, 1979. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Our review, as limited by *Pandolphe's,* finds full support for the court's factual findings and legal conclusions as to the applicability, under the circumstances of this case, of General Statutes § 49-41a. Accordingly, we find no error in the court's application of General Statutes § 49-41a and its award of attorney's fees and interest pursuant thereto.

The defendants also allege error in the court's computation of the amount due and the interest accrued under the contract. We see no merit to this claim. The essential dates concerning completion of the contract by the defendant, when payments to the plaintiff were due, when payments were made to Yonkers and that Yonkers failed to pay same in due course and after receiving notice under General Statutes § 49-41a were all established by the court. The computation of dam-

ages and interest became a mere mathematical procedure which was reasonably utilized by the trial court.

As its final averment of error, the defendants claim that there is reversible error on the counterclaim. In its forty-one page brief, the defendants' sole reference to this claim is as follows: "Since Yonkers' counterclaim for damages is a mirror image of the complaint, there is no need to consider it separately. If there is error in the complaint, there is error on the counterclaim." We refuse to accept such an unsupported assertion as a cognizable claim of error. It is the obligation of the appellant, when claiming error, to be direct and concise and to lay before this court, with precision, the exact claim which he is asking us to review. The defendants have referred to no legal authority for their claim of error on the counterclaim. "Bare assertions of error without citation to legal authority may constitute an abandonment of a claim." *State* v. *Chauvin*, 8 Conn. App. 307, 311, 512 A.2d 969 (1986). We will not consider this claim because "[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned." *Rodriguez* v. *Mallory Battery Co.*, 188 Conn. 145, 149, 448 A.2d 829 (1982).

## II

The plaintiff, in its cross appeal, claims that the trial court erred in failing to conclude that the plaintiff was entitled to the attorney's fees which it incurred as a result of the defendant's counterclaim. The court in its memorandum of decision with regard to damages expressly stated: "No award is, or will be, made for attorney['s] fees that were incurred as the result of the defendant's counterclaim." We concur with the conclusion of the trial court.

The trial court by its explicit denial of counsel fees for defense of the counterclaim has narrowed the issue

for us by limiting its award solely to reimbursement for counsel fees and expenses incurred by the plaintiff in its prosecution of the complaint. We are thereby not required to attribute any portion of the award to the defense of the counterclaim which, in the absence of the express award of the court, would have presented some difficulty. Because the issues are intertwined, it would have been virtually impossible to apportion the work of counsel between the prosecution of the complaint and the defense of the counterclaim.

"The rule in Connecticut is that absent contractual or statutory authorization, each party must pay its own attorney's fees." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* 193 Conn. 135, 140, 475 A.2d 305 (1984); *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 297, 472 A.2d 306 (1984); *State* v. *Bloomfield Construction Co.,* 126 Conn. 349, 359, 11 A.2d 382 (1940). Any statute in derogation of the general rule that each party pay his or her own attorney's fees should be construed so as to give it efficacy and application only under the circumstances where the conditions giving rise to the exception, under the statute, are manifest. General Statutes § 49-41a authorizes an award of counsel fees upon the written demand for the payment of sums due under a subcontract, by the subcontractor, when the general contractor has been paid by the state and has refused to place in escrow such funds claimed as due, and the party making the claim is found to have substantially performed its obligations under the subcontract in litigation to determine the validity of the claim.

The plaintiff reads § 49-41a as authorizing the payment of "attorney's fees" regardless of the type of legal work which precipitated the fee. The plaintiff argues that because the statute does not specifically *exclude* the payment of certain fees, the provision should be

interpreted to include any and all fees incurred as a result of the litigation. We do not believe that such an interpretation is warranted.

The statute as written, in plain and unambiguous language, enunciates the conditions which give rise to the defendant's obligation to pay the plaintiff's counsel fees. Without the statutory imposition of attorney's fees, the defendant would have no such liability. General Statutes § 49-41a contains no provision which authorizes an award of counsel fees for defending a counterclaim, therefore, the trial court was correct in declining to make such an award.

In conclusion, we hold that the trial court acted properly and in accordance with the applicable law in its findings and rulings as to the defendant's and plaintiff's claims of error. Accordingly, we find no error as to either the appeal or the cross appeal.

There is no error.

In this opinion, STOUGHTON, J., concurred.

BIELUCH, J., concurring in part and dissenting in part. I agree that there is no error in the defendants' appeal. As to the plaintiff's cross appeal, however, I would find error. The plaintiff has established its entitlement to additional attorney's fees incurred in its defense of Yonkers' countersuit for an alleged breach of the subcontract upon which the plaintiff had initially brought suit under General Statutes § 49-42 against the two sureties on the payment bond furnished under the provisions of General Statutes § 49-41.

On May 20, 1976, Yonkers entered into a contract with the state of Connecticut, project No. 96-114, 115, Newtown-Southbury, Interstate Route 84, for the construction of certain highways, bridges and structures. Under the requirements of General Statutes § 49-41 (a),

Reliance and General furnished a bond to the state as sureties for payment by Yonkers "for all materials and labor used or employed in the execution of such contract, to the extent as required by the General Statutes of Connecticut." By a subcontract with Yonkers, Ernst agreed to fabricate, deliver and erect structural steel for four bridges in accordance with the plans and specifications of the project for $3,220,000.

The necessary steel was fabricated, furnished and erected by the plaintiff in accordance with its subcontract. Upon the completion of the highway by Yonkers under its prime contract with the state it was paid in full. Of the amount received from the state, Yonkers paid Ernst only $2,928,477.75. When the balance due Ernst was refused, it then proceeded to comply with the conditions of General Statutes § 49-41a, first seeking payment, and thereafter demanding the deposit of the amount due in an interest-bearing escrow account. After Yonkers ignored these statutory demands, Ernst brought suit against the two sureties on their payment bonds pursuant to § 49-42, seeking interest and attorney's fees under § 49-41a in addition to the contractual sums due. In their answer, Reliance and General sought a setoff and recoupment for damages caused to Yonkers by Ernst's alleged breach of its subcontract. By Ernst's reply to these affirmative allegations, the issues in this case were closed on May 22, 1980.

More than two years later, Yonkers reopened the issues by successfully moving to be added as a party defendant[1] "so that it may seek affirmative relief against the Plaintiff for breach of the contract which is the subject matter of this cause of action and so that complete relief may be afforded to all the parties." Thereafter Yonkers filed a "Third Party Cross-

---

[1] The plaintiff did not object to Yonkers' self-impleader. See General Statutes § 52-102a; see also Practice Book § 117.

Complaint"[2] seeking damages from Ernst for breach of the subcontract. These alleged damages consisted of the claim for setoff and recoupment previously made by Reliance and General, and in addition, a new claim for damages in the amount of $56,158.19 for work, labor and materials which Ernst failed, omitted or refused to provide. Ernst denied these substantive allegations. It also filed a substituted complaint against all three defendants. In the first count, it sought recovery of the balance due under the subcontract, together with interest and attorney's fees pursuant to § 49-41a. The second and third counts sought recovery from the sureties, Reliance and General, respectively. In their answers, the defendants denied a breach of the subcontract by Yonkers. In addition, the defendants Reliance and General repeated their previous setoff and recoupment claims, but this time their allegations were expanded to those of Yonkers' "Third Party Cross-Complaint." The pleadings were again closed on December 12, 1983, and the parties went to trial thereafter on the affirmative issues raised by the plaintiff's substituted complaint, by Yonkers' "Third Party Cross-Complaint," and by the sureties' setoff and recoupment.

At trial the plaintiff claimed that the steel was delivered and erected within the agreement of the parties. The defendant Yonkers maintained that as a result of late delivery of steel and the late erection of the bridges, the entire project was delayed with a loss of profits which it sought to recover. At the request of the court,

[2] Although designated a "Third Party Cross-Complaint," under our practice such a pleading by a defendant against the plaintiff is called a counterclaim and the trial court properly referred to it as such. See Practice Book § 116 ("In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff and cross claims against any codefendant provided that each such counterclaim and cross claim arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint").

the trial was bifurcated. The first segment of the trial considered the issue of delivery of the steel by Ernst. Upon the completion of this evidence, the court found that the plaintiff "did in fact perform its contractual obligation within the terms of the contract. . . . [Therefore,] the defendant [was] not justified in withholding the disputed sums."

In the second phase of the trial, the court heard evidence on the outstanding issues regarding the plaintiff's damages. Upon the conclusion of its hearing, the court found that the plaintiff was entitled to recover from Yonkers the following sums: (1) $343,387.15 balance due on the contract as of April 23, 1979, after credits to the defendant of $6000 for splices and $4158 for back charges, with interest at the agreed contract rate of 1.5 percent per month; (2) $10,394.88 for extra work, with interest at the statutory rate under § 49-41a of 1 percent per month; and (3) attorney's fees under § 49-41a "of 20 percent of the sums found due as of the date of this judgment." Without furnishing any reason or explanation, the court peremptorily ruled as follows: "No award is, or will be, made for attorney's fees that were incurred as the result of the defendants' counterclaim." The plaintiff has appealed from the court's denial of its attorney's fees incurred in the defense of Yonkers' counterclaim. I would find error.

At the outset, it should be noted that the trial court failed to render judgment on Yonkers' counterclaim. Neither the memoranda of decision on liability and damages, nor the judgment file prepared by the clerk, show the rendition of a judgment by the court on the counterclaim. A judgment is in fact rendered whenever the trial judge announces his decision in court or out of court, orally or in writing, in any cause of action. The writing out of the judgment, in the form of a judgment file to be recorded, is a matter of subsequent clerical action. *Bogaert* v. *Zoning Board of Appeals,* 162 Conn.

532, 535 n.2, 294 A.2d 573 (1972); *Bulkeley's Appeal,* 76 Conn. 454, 457–78, 57 A. 112 (1904); *LaPre* v. *Nibo Films, Ltd.,* 10 Conn. App. 669, 673 n.4, 525 A.2d 140 (1987). Implicit in the trial court's memoranda, and the findings and conclusions contained in them, however, is an unexpressed judgment for the plaintiff on Yonkers' counterclaim. The parties to this appeal have proceeded on that assumption, and for the purposes of this review we may also hold to that course.[3]

Although the trial court gave no reason, factual or legal, for its denial of an award for attorney's fees incurred by the plaintiff in its defense of Yonkers' counterclaim, the majority opinion finds a legal basis for the trial court's ruling. The majority opinion holds that § 49-41a contains no provision authorizing an award of counsel fees for defending a counterclaim. That is a myopic view of the statute. Section 49-41a (b) provides that "[i]n the event that such general contractor or subcontractor refuses to place such funds in escrow, and the party making a claim against it under this section is found to have substantially performed its work in accordance with the terms of its employment in any arbitration or litigation to determine the validity of such claim, then such general contractor or subcontractor shall pay the attorney's fees of such party."

Attorney's fees in the context of § 49-41a include all legal fees necessarily incurred in the collection of the contractual payment. All of the enumerated conditions have been met here. The plaintiff, therefore, is entitled to full reimbursement of counsel fees incurred as a consequence of Yonkers' refusal to pay the contract balance because of its disproven claim that Ernst breached their subcontract, including the fees expended in the

---

[3] A judicial error on the record may be corrected upon motion to open or set aside the judgment. General Statutes § 52-212a; see *Varanelli* v. *Luddy,* 130 Conn. 74, 79, 32 A.2d 61 (1943).

defense of the counterclaim filed to defeat, or at least to minimize, any award of contractual damages to it. The defense of the counterclaim was a necessary component of the action brought by Ernst under § 49-41a to recover for its "labor performed or materials furnished" to "the contractor and paid by the state." This defense being an integral part of its statutory suit "to determine the validity of such claim, then [the] general contractor . . . shall pay the attorney's fees of such party."

Ernst initially brought this action against the two sureties on their payment bonds furnished to the state by Yonkers under the requirements of § 49-41. This suit was authorized by § 49-42. The pleadings in that case were closed on May 22, 1980. After more than two years, Yonkers reopened the case for the purpose of bringing a retaliatory action to defeat, in whole or in part, the plaintiff's claim for the contract balance due. As stated in its motion on October 8, 1982, it sought to "be made a party Defendant so that it may seek affirmative relief against the Plaintiff for breach of the contract which is the subject matter of this cause of action and so that complete relief may be afforded to all the parties." That it sought to achieve after it was allowed to enter the case by its "Cross-Complaint" or counterclaim. The counterclaim became an integral part of Ernst's suit to recover the balance due on its contract together with interest and attorney's fees under the provisions of § 49-41a. Therefore, it should have been awarded attorney's fees for all necessary services furnished in its successful defense of the counterclaim.

The majority opinion states that since § 49-41a contains no provision which authorizes an award of counsel fees for defending a counterclaim, the trial court was correct in declining to make such an award. Such a deductive conclusion begs the question. Section

49-41a (b) provides that "[i]n the event that such general contractor . . . refuses to place such funds in escrow, and the party making a claim against it under this section is found to have substantially performed its work in accordance with the terms of its employment in any arbitration or *litigation to determine the validity of such claim, then such contractor . . . shall pay the attorney's fees of such party.* " (Emphasis added.) There is nothing equivocal, uncertain or vague about this provision, its meaning or its application.

Yonkers at its risk refused to place the contested amount in an escrow account after demand by Ernst. After the plaintiff commenced this action, Yonkers supported this risk by bringing its counterclaim to counteract, and even counterattack, the plaintiff's collection of its contractual balance. The defense of Yonkers' counterclaim then became a necessary step in establishing the validity of the plaintiff's claim and the collection of interest and attorney's fees pursuant to the provisions of § 49-41a.

"Under our rules of practice, a counterclaim, if proper, is an independent action. See Practice Book §§ 116, 168, 169; *Hanson Development Co.* v. *East Great Plains Shopping Center, Inc.,* 195 Conn. 60, 63, 485 A.2d 1296 (1985); see also *Schurman* v. *Schurman,* 188 Conn. 268, 270, 449 A.2d 169 (1982). It has been defined as "a cause of action existing in favor of a defendant against a plaintiff *which a defendant pleads to diminish, defeat or otherwise affect a plaintiff's claim* and also allows a recovery by the defendant.' 1 Stephenson, Conn. Civ. Proc. (2d Ed. 1982 Sup.) § 129b." *Home Oil Co.* v. *Todd,* 195 Conn. 333, 341, 487 A.2d 1095 (1985). Yonkers' counterclaim was belatedly injected into this cause of action "to diminish, defeat or otherwise affect the plaintiff's claim" for recovery of the balance due it from Yonkers and was, therefore, an integral part

of the "litigation to determine the validity of such claim" under the provisions and entitlements of § 49-41a.

The trial court found that the plaintiff substantially performed its contract and, therefore, had a valid claim. This conclusion was reached by the trial court in this single action after the combined litigation of the plaintiff's substituted complaint, the sureties' setoff and recoupment, and Yonkers' long delayed counterclaim. To establish the validity of its claim under the requirements of § 49-41a, the plaintiff had to prevail on the three affirmative issues raised by the plaintiff and the defendants in their respective pleadings. That, the plaintiff did in obtaining judgment on its complaint. Therefore, under the provisions of § 49-41a it is entitled to all attorney's fees incurred in prosecuting and defending all phases of the "litigation to determine the validity of such claim."

The majority opinion states that "[b]ecause the issues are intertwined, it would have been virtually impossible to apportion the work of counsel between the prosecution of the complaint and the defense of the counterclaim." The evidence shows otherwise. There was testimony that Ernst had an agreement with its counsel in Buffalo, New York, to pay a collection fee in the amount of 20 percent of the sum recovered on its contract balance due from Yonkers. Ernst also agreed to pay its attorneys at an hourly rate for legal work necessary for the defense of any counterclaim or affirmative defenses that might be pleaded by the defendants. The reasonableness and amount of such fees were left to the determination of the trial court. In addition, disbursements and expenditures were properly to be reimbursed. This evidence of the retainer agreement of Ernst with its attorneys was for an unexplained reason not considered by the trial court when

it summarily decided that "[n]o award is, or will be, made for attorney's fees that were incurred as the result of the defendants' counterclaim."

I would find error on the plaintiff's cross appeal and remand the case for a hearing on the award of further attorney's fees to the plaintiff for its defense of Yonkers' counterclaim.