[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant SMP Developers, Inc. ("SMP") was the general contractor under a contract with the Housing Authority of the City of Stamford ("Housing Authority") for the construction of a six building moderate income housing project in the City of Stamford. ("Westover Project"). On September 6, 1990, the plaintiff entered an agreement with SMP to provide plumbing and heating services with respect to the Westover Project. (the "Basic Contract"). The Basic Contract was in the initial amount of $187,000 which was reduced by a change order to the amount of $178,000. The Basic contract required the plaintiff to provide plumbing and heating services with respect to Buildings #1, #3, #5 and #6. Payments were to be made to the plaintiff after requisitions were submitted and approved by the architect. After the execution of the Basic Contract, SMP and the plaintiff entered a oral agreement under which the plaintiff would provide labor, at the rate of $35 per hour per man, to complete the work on Units #2 and #4. The oral agreement was confirmed by writings of the respective parties dated September 13th and September 19th 1990. The work performed by the plaintiff under the oral agreement also required the approval of that architect.
During the fall of 1990, the Westover Project experienced vandalism damage which had to be corrected by SMP at its own cost. Accordingly, SMP retained the plaintiff to repair the vandalism damage on a time and material basis. Effective February 11, 1991, the plaintiff ceased performing services with respect to the Westover Project citing nonpayment of overdue bills as the precipitating cause and thereafter initiated the present action to recover the amounts claimed to be due.
At the time the plaintiff ceased performing services with respect to the Westover Project, payments under the Basic Contract were not over due based upon submitted requisitions which had been approved by the architect. However, with respect to Buildings #2 and #4, the court finds that sums were paid to SMP by the Housing CT Page 3506 Authority (i.e. the November and December billings totalling $13,965.00) for work performed by the plaintiff and SNP did not, in turn, pay the plaintiff. SMP had initially paid invoices, at the rate of $35 an hour, for the work performed with respect to Buildings #2 and #4 but thereafter, claimed that it should not have paid such rates. The court finds that the failure to pay the sums due to the plaintiff with respect to Buildings #2 and #4 was unjustified and constituted a material breach of that agreement.
With respect to the vandalism claims, SMP claimed that the insurance company would cover the damages only if the work were approved by the architect. The court finds that such an assertion for not paying the claims was unfounded and that SMP was not justified in failing to pay the vandalism claims. The court further finds that the failure to pay such claims constitute a material breach of that agreement.
The agreements under the Basic Contract, the vandalism claims, and the oral agreement relating to Buildings #2 and #4 all involve three separate agreements made at different times, under different terms and with different payment procedures. However, all the work was performed with respect to the Westover Project by the plaintiff for SMP and the material breaches of the vandalism agreement and the oral agreement for Buildings #2 and #4 constitute sufficient justification for the plaintiff to cease performing work under the Basic Contract. Under the Basic Contracts, 10% of the amounts owed were to be retained pending completion of the project. However, in view of the material breaches on the part of SMP, the plaintiff is entitled to the amounts held as retainage. The court further finds the issues for the plaintiff on the counterclaim and specifically finds that the plaintiff was not overpaid for work performed; that the work performed by the plaintiff was not substandard or defective, and that any delays caused to the project were not the result of any wrongful conduct on the part of the plaintiff.
The court further finds that the Standard Fire Insurance Company ("Standard") is obligated for sums due form SMP to the plaintiff under the bond executed by it.
The plaintiff also claims to be entitled to attorney's fees pursuant to the provisions of General Statutes 49-41a. Under General Statutes 49-41 a bond is required, with surety, for construction projects such as the one involved in this litigation "for the protection of persons supplying labor or materials and the prosecution of the work provided for in the contract for the use of each such person. . . ." General Statutes 49-41a(a) provides for payments to be made by the general contractor to a subcontractor within 30 days after the contractor receives payment. Under subsection (b) thereof, a procedure is set forth covering the situation where such set forth payments have not been made to the CT Page 3507 subcontractor including provisions for placing the amount of the claim in an escrow account. The statute then provides:
 "In the event that such general contractor or subcontractor refuses to place such funds in escrow, and the party making a claim against it under this section is found to have substantially performed its work in accordance with the terms of its employment in any arbitration or litigation to determine the validity of such claim, then such general contractor or subcontractor shall pay the attorney's fees of said party."
As apparent from a review of the provisions of General Statutes 49-41 (a)(b) that the provisions of payment of attorney's fees applies to those situations where the contractor is required to pay the subcontractor within 30 days after being paid by the municipality.
In the present case, when the plaintiff ceased performing services on February 11, 1991, SMP had received payments which had not been forwarded to the plaintiff only with respect to the work performed regarding Buildings #2 and #4. Accordingly, the plaintiff is entitled to attorney's fees with respect to the sum of $13,965 which had been received by SMP but not paid to the plaintiff. The defendant Standard is also responsible, under its bond, for the payment of such attorney's fees. See Ernst Steel Corp. v. Reliance Ins. Co., 13 Conn. App. 253 (1988). The plaintiff has filed an affidavit for counsel fees relating to the entire litigation and the affidavit does not apportion those fees to the claims involving the basic contract, buildings #2 and #4 in vandalism claims. However, the court does not deem it appropriate to deny the claim in total, and accordingly, an evidentiary hearing will be held on May 1, 1992 at 10:00 a.m. to determine the attorney's fees attributable to the agreement relating to Buildings #2 and #4.
The court therefore finds that the plaintiff is entitled to recover from the defendants the sum of $58,630.60 which is based upon the finding of the court that the plaintiff is entitled to recovery as follows:
 The basic contract $16,098.88 Buildings #2 #4 17,010.00 Vandalism claims 13,432.72 retainages 12,089.72 ---------- 58,630.60
In addition, the plaintiff is entitled to recover its attorney's fees to recover the $13,965 for the November and CT Page 3508 December payments that were not remitted to the plaintiff.
The court also finds that the plaintiff filed an offer of judgment on August 5, 1991 in the amount of $50,000 which was not accepted by the defendants. Since the offer of judgment was filed within eighteen months from the date the complaint was filed with the court (July 2, 1991), the plaintiff is entitled to recover annual interest from July 2, 1991 at the rate of twelve per cent pursuant to the provisions of General Statutes 52-192a. The total monetary judgment will be included in a final judgment to be determined following the hearing scheduled for May 1, 1992.
RUSH, JUDGE