388 F.3d 30
 ELGARD CORPORATION, Plaintiff-Appellant-Cross-Appellee,
v.
BRENNAN CONSTRUCTION COMPANY and American Insurance Company, Defendants-Third-Party-Plaintiffs-Appellees-Cross-Appellants,
Robert C. Adams, Debra E. Adams and R.C. Adco Inc., Third-Party-Defendants.
 Docket No. 00-9326.
 Docket No. 00-9388.
 United States Court of Appeals, Second Circuit.
 Argued: May 3, 2004.
 Decided: October 13, 2004.
 
 Appeal from the United States District Court for the District of Connecticut, Donna F. Martinez, United States Magistrate Judge. COPYRIGHT MATERIAL OMITTED William J. Egan (Barbara E. Crowley, on the brief), Egan & Crowley, P.C., New Haven, CT for Appellant.
 Daniel J. Klau (Richard F. Wareing, on the brief), Pepe & Hazard LLP, Hartford, CT for Appellee.
 Before: CARDAMONE and JACOBS, Circuit Judges, KORMAN,* District Judge.
 JACOBS, Circuit Judge.
 
 
 1
 Following a bench trial in this diversity action, the United States District Court for the District of Connecticut (Martinez, Magistrate Judge) awarded contract damages and statutory interest in favor of Appellant-Cross-Appellee Elgard Corporation ("Elgard") in connection with a 1992 construction project. Elgard challenges the district court's exclusion of certain contract and offer-of-judgment interest from the award in its favor, and the denial of attorney's fees. Appellees-cross-appellants Brennan Construction Company ("Brennan") and American Insurance Company ("American") (collectively, "defendants") cross-appeal the award of statutory interest pursuant to Conn. Gen.Stat. § 49-42 and the rejection of Brennan's equitable estoppel defense. For the reasons set forth below, we (i) affirm the judgment as to liability but (ii) reverse the denial of attorney's fees and (iii) vacate the damage award and remand for recalculation in a manner consistent with this opinion.
 
 BACKGROUND
 
 2
 Brennan, a Connecticut-based general contractor, entered an agreement in April 1992 with the State of Connecticut ("the State") to rehabilitate a bridge over the West River in New Haven. The project called for the installation of an anti-corrosive cathodic protection system, which Brennan subcontracted to R.C. Adco, Inc. ("Adco"). Adco in turn subcontracted with Elgard to manufacture the necessary equipment. The Elgard/Adco subcontract became effective on or about April 29, 1992. For $110,200, Elgard was to produce and deliver the protection system to Adco, which would install it. The Elgard/Adco contract further provided that "[a]ny balance remaining due after thirty (30) days of delivery shall accrue interest at the rate of one and one-half percent (1 1/2%) per month." As of September 9, 1992, Elgard delivered to Adco all materials called for under the contract, and has been seeking collection ever since.
 
 
 3
 * As a sub-subcontractor, Elgard was required to submit invoices to Adco, which would submit them to Brennan, which would seek payment from the State. Upon receipt of state funds, Brennan was to send payment back down the chain, through Adco to Elgard. The cause of the various controversies is that Adco used fraud to induce payment by the State to Brennan, and by Brennan to Adco for Elgard's account, and then misappropriated Elgard's money en route.
 
 
 4
 On June 30, 1992, Adco submitted to Brennan a requisition for payment in the amount of $107,445.[1] By regulation, Connecticut will reimburse a contractor for so-called "unincorporated" materials mid-construction if "such materials have been paid for by the Contractor as shown by receipted bills, or in lieu of such receipted bill or bills, a duly executed Certification of Title executed by the Contractor and the Vendor in the form approved by the Department [of Transportation]." Conn. Dept. of Transp., Standard Specifications for Roads, Bridges and Incidental Construction § 1.09.06(B). Thus, Adco was entitled to payment if it had paid Elgard for the materials, or if it provided Brennan with a Certification of Title to a presently-existing cathodic protection system. Adco furnished a Certification of Title, but the certificate was deficient in two critical and undisputed respects: (i) partial delivery had been made to Adco's West Haven storage facility as of the date it sought payment, but the balance of the system was not scheduled to arrive until early September 1992; and (ii) without Elgard's knowledge or consent, Adco's president, Robert Adams, forged Elgard's signature on the Certification of Title. The forgery that Adams submitted to Brennan was accompanied by two Elgard invoices, seemingly in an effort to suggest that the equipment had been delivered. Adco had asked Elgard in late May 1992 to invoice for the cathodic protection system, notwithstanding that no equipment had yet been delivered. Elgard sent Adco two invoices dated May 29 and June 4, 1992, but each invoice reflected that no materials had been shipped as of those dates.
 
 
 5
 In reliance on Adco's forgery, Brennan signed the title certification and requested payment from the State. Before paying Brennan, the State sent an inspector to Adco's West Haven storage facility to verify the presence of the cathodic protection system. By that time, all but two rectifiers (a $10,000 value) had arrived, and Adams—perhaps expecting the audit—had planted among the West River bridge materials a single rectifier meant for another job. The ruse succeeded; the inspector noted that some equipment appeared to be missing, but allowed himself to be persuaded that the project specifications called for a single rectifier and (thus satisfied) was sent on his way.
 
 
 6
 On August 14, 1992, the State issued a check to the order of Brennan in the amount of $107,445. Two weeks later, Adams came to Brennan's offices looking for payment. He received a check in the amount of $107,445 payable to "R.C. Adco, Inc./Elgard Corporation." Adams knew the funds were meant for Elgard, and indicated to Brennan that he would send the check to the company. Instead he deposited the funds in an Adco account. Brennan was unaware that Adco had filed for bankruptcy eleven days before this misappropriation.
 
 
 7
 In the meantime, Elgard completed manufacture of the cathodic protection equipment, all of which was delivered to Adco as of September 9, 1992. Elgard awaited payment. The underlying litigation started when Elgard ran out of patience.
 
 II
 
 8
 The procedural posture of this 12-year litigation is complicated by Adco's bankruptcy and by Connecticut law, which affords subcontractors like Elgard specific remedies for nonpayment.
 
 
 9
 Brennan undertook the West River bridge rehabilitation pursuant to a bonded construction contract that was subject to Conn. Gen.Stat. § 49-42. As a condition precedent to signing the contract, Elgard and its surety, American, executed a $1.4 million payment bond in favor of the State. Under § 49-42, a subcontractor can enforce its right to payment under such a bond by serving a notice of claim on the surety "within one hundred eighty days after the date [bonded] materials were supplied." Conn. Gen.Stat. § 49-42(a). Elgard delivered the last of the cathodic protection equipment to Adco on September 9, 1992, and duly served a notice of claim on American 114 days later, on January 26, 1993.
 
 
 10
 When American investigated the claim, it learned that Brennan had received the Elgard invoices and the forged Certification of Title for the cathodic protection system on June 30, 1992, and had paid Adco for the equipment two months later. Because Elgard submitted its claim (on January 26, 2003) more than 180 days after the date on which American (erroneously) believed the equipment had been delivered (i.e., June 30, 1992), it was denied as untimely.
 
 
 11
 Section 49-42 provides that when a surety denies liability on a bonded claim, the claimant can file suit in Connecticut Superior court within one year of the date that materials were last supplied. Conn. Gen. Stat. § 49-42(a), (b). Elgard commenced the underlying action in the District of Connecticut[2] on September 2, 1993, "demand[ing] a judgment against Brennan and American in the sum of $107,445, plus interest, costs, and attorneys' fees." Five days later, Elgard filed a settlement offer in the amount of $105,000, pursuant to Connecticut's "Offer of Judgment" statute. See Conn. Gen.Stat. § 52-192a. Brennan and American moved to dismiss for failure to state a claim.
 
 
 12
 During the pendency of that motion, Brennan moved in the Adco bankruptcy proceedings for an allowance of an administrative expense claim in the amount of $107,445 on the grounds that (i) Adco's "estate ha[d] been benefitted by virtue of Brennan's post-petition payment of ... $107,445 ... which should have rightfully been turned over to Elgard for the post-petition delivery of goods," and (ii) that "any payment ... of the administrative expense claim to Brennan would be turned over to Elgard in satisfaction of any of its valid claims against ... Brennan related to the payment of the cathodic protection system materials." The United States Bankruptcy Court for the District of Connecticut granted the motion on March 24, 1994. At approximately that time, Brennan recovered $77,445, and entered an agreement with Adco that $30,000 was still owing from Adco's bankruptcy estate. Contrary to its representations to the bankruptcy court, Brennan did not pay Elgard the $77,445, but continued to contest the § 49-42 action in the District of Connecticut, where it asserted various affirmative defenses, including the statute of limitations and estoppel.
 
 
 13
 On February 7, 1997, three years after Brennan recovered on the administrative expense claim (ostensibly to pay Elgard for the cathodic protection system), Brennan sent the subcontractor a check in the amount of $107,445, with a cover letter reciting that the funds were to be used "as a principal only payment," and "not ... for interest or attorney's fees ... or for any other purpose." Elgard cashed the check, and the litigation continued. Magistrate Judge Donna F. Martinez conducted a bench trial from May 13 to 15, 1998. In a decision entered September 27, 1999, the district court found Brennan and American liable to Elgard under Conn. Gen.Stat. § 49-42, rejecting defendants' defenses of estoppel and limitations. The judgment (a) awarded Elgard $78,001.28 in statutory interest pursuant to § 49-42, but (b) denied its claim for interest alleged to be due and owing under the Elgard/Adco contract and (c) because the amount recovered did not exceed $105,000, denied Elgard's claim for "offer of judgment" interest pursuant to Conn. Gen.Stat. § 52-192a. This appeal and cross-appeal ensued.
 
 DISCUSSION
 
 14
 In diversity cases, we review a district court's findings of fact for clear error, Elliott Assocs., L.P. v. Banco de la Nacion, 194 F.3d 363, 369 (2d Cir.1999), and its conclusions of state law de novo, Salve Regina College v. Russell, 499 U.S. 225, 231, 233-34, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The district court found: (i) that Elgard supplied materials in the prosecution of work described in Brennan's contract with the State; (ii) that Elgard was not paid for those materials within 90 days of the date they were last supplied; (iii) that Elgard's notice of claim to American was timely under § 49-42; and (iv) that Elgard had timely commenced suit within the limitations period following American's denial of its claim. These findings are not contested on appeal, and they are sufficient to sustain the district court's finding of liability under § 49-42. Defendants' challenge to the denial of their equitable estoppel defense is borderline frivolous at best. There remains only Elgard's appeal as to prejudgment interest, offer-of-judgment interest, and attorney's fees.
 
 
 15
 * In an action to recover on a bonded contract pursuant to § 49-42, "the court judgment shall award the prevailing party the costs for bringing such proceeding and allow interest at the rate of interest specified in the labor or materials contract under which the claim arises ... upon the amount recovered." Conn. Gen Stat. § 49-42(a). To determine the "amount recovered," the court looks to "the subcontractual value ... placed on the work performed." Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc., 239 Conn. 708, 720, 687 A.2d 506 (1997). The Elgard/Adco subcontract is a straightforward, single-page price quote providing that Elgard would manufacture and deliver a cathodic protection system for a principal amount of $110,200, and that "[a]ny balance remaining due after thirty (30) days of delivery shall accrue interest at the rate of one and one-half percent (1 1/2%) per month."
 
 
 16
 As of September 9, 1992, Elgard had completed delivery of the materials, and was owed $107,445. Per contract, interest began to accumulate on that amount at 18% per annum 30 days later. On February 7, 1997, Brennan sent Elgard a check for $107,445, which it characterized as a "principal only payment" for the cathodic protection system. As of that date, Elgard was owed the $107,445 principal plus years of contractual interest, i.e., $78,001.28,[3] for a total due of $185,446.28. The $78,001.28 in interest remained unpaid, and Brennan continued to contest its obligation to pay interest under the contract through trial in May 1999. When judgment was entered on September 30, 1999, the district court should have awarded Elgard the $78.001.28 in accumulated contract interest, plus prejudgment interest on that unpaid amount pursuant to § 49-42 of $37,113.90,[4] for a total award of $115,115.18.
 
 
 17
 Magistrate Judge Martinez appears to have concluded that Elgard "prevail[ed]" within the meaning of § 49-42 when it received Brennan's check for $107,445 on February 7, 1997, and the court therefore awarded 18% per annum statutory interest on that amount, i.e., $78,001.28. This calculation is erroneous in two respects. First, by February 7, 1997, Elgard was owed $185,446.28 in principal plus interest under the disputed materials contract. Second, Elgard did not "prevail" for § 49-42 purposes on February 7, 1997; it prevailed two and one-half years later, when it was awarded a judgment. In Connecticut, a party "who has secured a judgment of the court" has prevailed. See, e.g., Wallerstein v. Stew Leonard's Dairy, 258 Conn. 299, 303-04, 780 A.2d 916 (2001).
 
 II
 
 18
 Connecticut's offer-of-judgment statute, Conn. Gen.Stat. § 52-192a, provides that:
 
 
 19
 (a) After commencement of any civil action based upon contract or seeking the recovery of money damages ... the plaintiff may ... file with the clerk of the court a written "offer of judgment"... offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain.... If the "offer of judgment" is not accepted within sixty days and prior to the rendering of a verdict by the jury or an award by the court, the "offer of judgment" shall be considered rejected ...
 
 
 20
 (b) After trial the court shall examine the record to determine whether the plaintiff made an "offer of judgment" which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in the plaintiff's "offer of judgment", the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date ... the complaint in the civil action was filed ...
 
 
 21
 Conn. Gen.Stat. § 52-192a(a), (b) (emphasis added). The purpose of the statute is to conserve judicial resources by encouraging "fair and reasonable compromise between litigants and by penalizing a party that fails to accept a reasonable offer of settlement." Blakeslee, 239 Conn. at 742, 687 A.2d 506. An "offer of judgment is to be compared to the amount that the plaintiff `has recovered,' which includes compensatory interest." Id. at 740 n. 35, 687 A.2d 506.
 
 
 22
 Elgard offered to settle for $105,000 on September 7, 1993, the same day it filed its complaint against Brennan and American. Defendants rejected the offer and have waged a 12-year litigation in an effort to avoid paying for the cathodic protection system that Brennan unquestionably received and incorporated into the rehabilitation of the West River bridge. Since Elgard was entitled to a $115,115.18 judgment—well above the $105,000 settlement offered in 1993—it is entitled to offer-of-judgment interest in the amount of $83,791.24.[5]
 
 III
 
 23
 A Connecticut court may award attorney's fees in a recovery action under § 49-42,
 
 
 24
 if upon reviewing the entire record, it appears that either the original claim, the surety's denial of liability, or the defense interposed to the claim is without substantial basis in fact or law.
 
 
 25
 Conn. Gen.Stat. § 49-42(a). "The rule in Connecticut is that absent contractual or statutory authorization, each party must pay its own attorney's fees. Any statute in derogation of the general rule ... should be construed so as to give it efficacy and application only under the circumstances where the conditions giving rise to the exception, under the statute, are manifest." Ernst Steel Corp. v. Reliance Ins. Co., 13 Conn.App. 253, 536 A.2d 969, 974 (1988).
 
 
 26
 Though we have found no controlling precedent on the question, the parties agree that we would review a Connecticut court's rulings with respect to attorney's fees for abuse of discretion, and we adopt that standard here. In Connecticut,
 
 
 27
 "[d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.... State v. Polanco, 26 Conn.App. 33, 41, 597 A.2d 830 (1991). The salient inquiry is whether the court could have reasonably concluded as it did. Yale University School of Medicine v. McCarthy, [26 Conn.App. 497, 500-501, 602 A.2d 1040 (1992)]. It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds. State v. Schroff, 198 Conn. 405, 413, 503 A.2d 167 (1986). In determining whether there has been an abuse of discretion, much depends upon the circumstances of each case. Id." (Internal quotation marks omitted.) State v. Arbour, 29 Conn.App. 744, 748, 618 A.2d 60 (1992).
 
 
 28
 Thames River Recycling, Inc. v. Gallo, 50 Conn.App. 767, 720 A.2d 242, 262 (1998).
 
 
 29
 The district court denied Elgard's request for attorney's fees on the ground that the estoppel defense asserted by Brennan and American was not without substantial basis in fact or law. We disagree. Attorney's fees are appropriately awarded under § 49-42 if the court finds that any of the original claim, its denial, or the defenses interposed are "without substantial basis in fact or law." Conn. Gen Stat. § 49-42(a). The original claim and American's denial of it were both tenable: Elgard had not been paid as of the time it submitted the claim on January 26, 1993; and when American initially denied the claim two months later, there was unresolved confusion surrounding the final delivery date of the cathodic protection system (i.e., June 30, 1992 or at some later date).
 
 
 30
 There was, however, no substantial basis in fact or law for the estoppel defense interposed by Brennan and American on August 8, 1994. The premise of estoppel was that "Elgard represented" in the Certification of Title "that it ha[d] made an outright sale or transfer" of the cathodic protection system to Brennan, and that "Brennan relied upon Elgard's representations contained in the Certification of Title and in the Invoices from Elgard to Adco, particularly, but not limited to, Elgard's representation of delivery of the cathodic protection system materials on or prior to June 30, 1992, to request payment from the State of Connecticut, and thereafter to pay Adco." Brennan & American Answer and Affirmative Defenses ¶¶ 5-6 (emphases added).
 
 
 31
 In its letter dated April 1, 1993, Elgard informed Brennan and American (i) that it had "never seen" a Certificate of Title for the cathodic protection system and (ii) that no one by the name of the purported signatory "ha[d] ever been employed by either Elgard ... or its parent." Elgard further indicated that it would forward the letter to the Connecticut Department of Transportation and to the bankruptcy court for the district, and urged the defendants to investigate the facts for themselves. In July 1993 (more than a year before the defendants asserted their estoppel and other defenses in the District of Connecticut) Elgard forwarded to American the results of the State's investigation of the matter. That investigation (i) established that Elgard shipped the final elements of the cathodic protection system on September 2, 1992, and (ii) noted that Elgard disputed the authenticity of the Certification of Title forged by Adco. Finally, in February 1994, Brennan petitioned in Adco's bankruptcy proceedings for an administrative expense claim equal to the value of the cathodic protection system, on the grounds that Adco's "post-petition acceptance of payment, acceptance of the delivery of the materials and failure to turn over the $107,445.00 Check to Elgard in consideration for the post-petition delivery of the ... materials has resulted in [Adco] having the benefit of $107,445 ..." Brennan's Mot. for Relief from the Automatic Stay and Application for Allowance of Administrative Expense Claim ¶¶ 17-18.
 
 
 32
 Given these facts (and Brennan's contradictory representations in the Adco bankruptcy) it is hard to find any factual basis for defendants' assertions, on August 8, 1994, that Elgard made any misrepresentations with respect to the title or delivery of the cathodic protection system. Defendants' estoppel defense therefore had no substantial basis in fact, and the district court's denial of attorney's fees rests on "untenable grounds." Thames River, 720 A.2d at 262. On these facts, Elgard has a manifest basis for attorney's fees under § 49-42. See Ernst Steel, 536 A.2d at 974.
 
 CONCLUSION
 
 33
 For the foregoing reasons: (i) the district court's finding of liability is affirmed; (ii) the denial of Elgard's request for attorney's fees is reversed; and (iii) the judgment is vacated and remanded for recalculation consistent with this opinion,[6] including prejudgment interest and attorney's fees under § 49-42, and offer-of-judgment interest under § 52-192a. The judgment is in all other respects affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 The Elgard/Adco subcontract provided that Elgard would supply the cathodic protection system for $110,200. That amount includes $2,755 of retainage, which Elgard does not seek
 
 
 [2]
 Defendants' challenge to federal diversity jurisdiction was unsuccessfulSee Elgard Corp. v. Brennan Constr. Co., 157 F.R.D. 1 (D.Conn.1994).
 
 
 [3]
 Elgard does not contest the district court's use of January 26, 1993—the date it served a notice of claim on American—as the start date for the calculation of contract interest, thus, $78,001.28 = ($107,445 × 18%/365) × (1,472 days between January 26, 1993 and February 7, 1997)
 
 
 [4]
 ($78,001.28 × 18%/365) × (965 days between February 7, 1997 and September 30, 1999)
 
 
 [5]
 I.e., ($115,115.18 × 12%/365) × (2,214 days from September 7, 1993 through September 30, 1999). This calculation of the amount recovered amount does not reflect the $107,445 Brennan paid to Elgard in February 1997—a result that may seem anomalous given that Elgard would not likely have recovered the money absent litigation. Moreover, the 1997 payment appears in the "record," and could (arguably) be included in the amount Elgard "recovered" within the meaning of § 52-192a. The Connecticut Supreme Court construes the term "recovered" more narrowly, however. Though it has not faced the precise circumstances of this case, the amount "recovered" for purposes of § 52-192a(b) is limited to the amount reflected in a judgment, see Civiello v. Owens-Corning Fiberglass Corp., 208 Conn. 82, 90-93, 544 A.2d 158 (1988), or a jury verdict, see Cardenas v. Mixcus, 264 Conn. 314, 320-24, 823 A.2d 321 (2003).
 
 
 [6]
 The calculations made in this opinion are based on the record on appeal. The district court is free to adjust them as appropriate to ensure that the final award is consistent with any conventions not reflected in this opinion (e.g., the counting of days between particular dates).