## TDS PAINTING AND RESTORATION, INC. *v.* COPPER BEECH FARM, INC.
## (AC 22086)

Schaller, Flynn and West, Js.

Argued June 4—officially released November 12, 2002

*Andrew J. McDonald,* with whom, on the brief, was *Peter S. Olson,* for the appellant-appellee (plaintiff).

*Scott R. Lucas,* with whom was *Mary Alice S. Canaday,* for the appellee-appellant (defendant).

SCHALLER, J. The plaintiff, TDS Painting and Restoration, Inc. (TDS Painting), appeals and the defendant, Copper Beech Farm, Inc. (Copper Beech), cross appeals from the trial court's supplemental judgment rendered after remand from this court, from the trial court's ruling on TDS Painting's motion to open the judgment and from the trial court's judgment of foreclosure. TDS Painting claims on appeal that the court (1) misinterpreted the remand from this court, thereby failing to render judgment in accordance with the attorney trial referee's (referee) report, (2) improperly determined that TDS Painting was not entitled to postjudgment interest from the date of the original judgment, and (3) misinterpreted our remand and refused to order the referee to consider postjudgment attorney's fees and costs of collection. On cross appeal, Copper Beech claims that the court improperly (1) remanded the matter to the referee and increased TDS Painting's damages award, (2) adopted the recommendation of the referee as to the increased damages award and (3) rendered judgment on TDS Painting's lien. We reverse, in part, the judgment of the trial court on TDS Painting's appeal and affirm the judgment on Copper Beech's cross appeal.

The referee found the following facts on the basis of evidence presented at the original hearing before the referee. The Copper Beech property consists of fifty acres of real property with a number of buildings on Long Island Sound at Mead Point in Greenwich, and includes Goose Island and White Rock Island.[1] Copper Beech, which acquired the property in 1982 for $7.55 million, is a corporation owned entirely by John M. Rudey (Rudey) and his wife, Laurie Rudey. Rudey is

---

[1] Copper Beech Farm consists of a very large main house comparable to the scale and grandeur of many hotels.

the president of Copper Beech, and his wife is the secretary. In December, 1982, Rudey individually entered into a ten year lease with Copper Beech, under which the main residence on the property was leased to be used "as a living place for [Rudey] and [f]amily." The lease was not an arm's length or market transaction. The goal of the lease payments was to reimburse the corporation for costs associated with Rudey's use.[2] The lease was not intended to make a profit. The Rudeys, whose permanent residence is in New York City, used the Copper Beech property as a summer home and occasional retreat.

In early 1991, Rudey wanted to have the main house on the Copper Beech property painted and restored. Rudey called Donald Freitag, president and owner of TDS Painting, to discuss the proposed project. Freitag and Rudey discussed the scope of the job, the price and certain precautions that TDS Painting would take. Before any contract was signed, TDS Painting began work on the project at Rudey's request.

On February 22, 1991, Freitag and Rudey executed a written contract. The contract is in the form of a proposal submitted to "Mr. John Rudy [sic] Copper Beech Farm Inc." The contract specifies that work areas "will be covered thoroughly and cleaned up daily." There is no maximum price for the work to be performed under the agreement; rather, the contract provides an estimate that the labor will range from 250 to 500 "man hours" per week, which would be billed bimonthly. On the back of the second page of the contract, printed terms provided for the payment of attorney's fees and costs of collection in the event of default. Rudey was aware of those terms when he signed the contract.

---

[2] The lease required the tenant to pay $10,000 per year for the first two years and $20,000 per year thereafter until December 31, 1992.

TDS Painting performed the work under the agreement for several weeks and submitted invoices to Copper Beech. Copper Beech paid the invoices with certain adjustments. Several disputes arose during the course of the job, including complaints by Joseph Blank, a horticulturist, who resided on the property and managed it for Copper Beech. Blank complained that TDS Painting's employees were littering the property and taking long, unjustified breaks. Rudey and Freitag discussed those issues.

By April, 1991, the job had advanced considerably but was not yet complete. The total cost to that point exceeded $25,000. Rudey and Freitag executed a supplemental agreement, designed to expand the scope of TDS Painting's work and to address the additional costs to be incurred on the project in early May, 1991. The supplemental contract also was on a time and materials basis, and stated that "all [of certain] costs are estimates only and will be billed for the actual labor hours and materials used."

Copper Beech paid the invoices submitted to it through June 16, 1991. At some point between mid-June and August, Rudey moved to the Copper Beech property for the summer. While living there, Rudey expressed concerns regarding TDS Painting's performance.[3] TDS Painting continued its work until the first week of August, 1991. Despite having expressed his concerns, Rudey asked TDS Painting to perform "extra work" outside the scope of the original contract. The extra work consisted of painting the interior portions of the

---

[3] Rudey complained that (1) TDS Painting should not have charged for the use of "tools of the trade" under the category of "job materials," (2) TDS Painting broke windows on the premises, (3) TDS Painting billed for time spent repairing damage caused by TDS Painting's agents, (4) excessive work breaks were being taken by TDS Painting's employees and (5) excessive quantities of paint dust was allowed to collect on the property.

home during the months of June and July.[4] At some time between mid-June and August, Rudey informed TDS Painting that he believed that the April 25, 1991 supplemental contract had a fixed ceiling and that the ceiling had been exceeded. Rudey refused to make any further payments. Rudey then informed TDS Painting that he believed that TDS Painting was responsible for extensive damage to the Copper Beech property and, therefore, was entitled to no additional sums. Payments were made by Rudey through June 26, 1991, totaling $92,899.36. TDS Painting submitted invoices for the balance of its work totaling $62,894.71. On July 26, 1991, Rudey made a partial payment of $5000, leaving a balance of $57,894.71. Rudey refused to make any further payments despite an outstanding balance of $57,894.71. At about that same time, Copper Beech determined that the soil surrounding the main residence at the property was contaminated with lead due to the paint removal process. Negotiations between the parties were not fruitful and litigation ensued.

The following exhaustive recitation of the procedural history of the action is necessary to analyze fully TDS Painting's claims on appeal and Copper Beech's claims on cross appeal. On December 9, 1991, TDS Painting commenced an action to foreclose a mechanic's lien. That first action consisted of a three count complaint. Count one concerned the foreclosure of the lien, count two claimed damages under a theory of quantum meruit, and count three claimed damages under a theory of unjust enrichment. Copper Beech filed a counterclaim, alleging breach of contract, negligence, trespass and violations under the Home Improvement Act (HIA), General Statutes § 20-418 et seq.,[5] and a resulting per

---

[4] That work is considered the "extra work" that is in dispute under plaintiff's first claim.

[5] It is undisputed that TDS Painting was not registered as a home improvement contractor until October 31, 1991, after the dispute with Copper Beech arose.

se violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Finally, Rudey, in a companion action, also alleged the three theories of recovery raised by Copper Beech in Copper Beech's counterclaim. The two cases were consolidated and tried before the referee.

The referee filed a report on February 8, 1995, recommending judgment in favor of TDS Painting on its complaint, and against Copper Beech and Rudey on the counterclaim and the companion case, respectively. The referee found, among other things, that (1) the provisions of the HIA were inapplicable because Copper Beech's property was commercial in nature and that the agreement of the parties fell within the "commercial exception" to the HIA, and (2) TDS Painting was entitled to recover for the balance due on its written agreements with Copper Beech, and for extras, in the total amount of $57,894.71. The parties stipulated to reserve the issue of attorney's fees for a separate hearing.

On April 10, 1995, Copper Beech filed a motion to correct the referee's report concerning findings of fact and conclusions of law, and on April 17, 1995, the parties presented their evidence relevant to attorney's fees. The referee ruled on Copper Beech's motion to correct the report as to findings of fact and conclusions of law, and issued his ruling concerning attorney's fees. On October 13, 1995, the referee ruled that TDS Painting's remedy on its foreclosure count, count one, should be restricted to contract damages and should not include damages for extra services performed outside the scope of the contract.[6]

---

[6] The referee stated that "[a]ll requested corrections are denied with the exception of finding [of fact] number thirty-two." The referee also granted Copper Beech's request to correct conclusion of law number thirty-two and stated that "in light of the ruling with respect to finding of fact number thirty-two, [the] plaintiff's remedy under the first count of the complaint is restricted to the contract damages and not the charges for extra work."

On October 30, 1995, the referee issued a ruling regarding attorney's fees, concluding that TDS Painting was entitled to recover $83,910 for legal services through February, 1995. In the ruling, the referee also asked for further briefing on "costs" available to TDS Painting. Subsequently, on November 15, 1995, Copper Beech and Rudey filed exceptions and objections to the referee's report pursuant to Practice Book §§ 439 and 440, now § 19-14.

On March 4, 1996, the court, after reviewing the referee's record and report, issued its memorandum of decision. The court (1) accepted the referee's conclusion that Copper Beech, not Rudey, was the contracting party and hence a proper defendant, (2) accepted the referee's conclusion that Copper Beech did not exhibit bad faith as required to excuse or to negate a violation of the HIA, (3) rejected the referee's finding that the Copper Beech property was commercial in nature and, hence, the referee's conclusion that TDS Painting was exempt from the provisions of the HIA, and (4) accepted the referee's conclusion that Copper Beech and Rudey failed to prove that TDS Painting had acted negligently in rendering painting and restoration services. Accordingly, the court rendered judgment in favor of Copper Beech with respect to TDS Painting's complaint and in favor of TDS Painting with regard to Copper Beech's counterclaim. The court also rendered judgment in favor of TDS Painting on Rudey's complaint.

In response, on March 8, 1996, Copper Beech and Rudey filed a motion to have the court modify its memorandum of decision by rendering judgment on counts they had asserted that alleged that TDS Painting had violated CUTPA due to TDS Painting's failure to abide by the HIA. Contemporaneous with Copper Beech's and Rudey's motion, TDS Painting filed a motion to vacate or, in the alternative, to reconsider the court's decision.

On April 12, 1996, the court issued a supplemental decision addressing the parties' motions. In its supplemental decision, the court denied TDS Painting's motion to vacate or for reconsideration and *modified* its original judgments to reflect TDS Painting's per se violation of CUTPA. TDS Painting filed an appeal on May 1, 1996, from the supplemental judgment and the court's denial of TDS Painting's motion to open the judgments.[7] Copper Beech and Rudey cross appealed on May 8, 1996.[8]

On appeal, we reversed the judgments of the trial court and concluded that "the determination as to whether a particular property is commercial in nature for purposes of the 'commercial exception' to the [HIA] is a factual determination, and not a matter of law . . . ." *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, 45 Conn. App. 743, 751, 699 A.2d 173, cert. denied, 243 Conn. 908, 701 A.2d 338 (1997). We concluded that the court improperly invaded the referee's fact-finding province. We also concluded that Copper Beech and Rudey could not prevail on the cross appeal. In our rescript, we ordered: "The judgments are reversed and the case is remanded with direction to

---

[7] On appeal, TDS Painting specifically claimed that the court improperly (1) rejected the referee's finding that the Copper Beech property was commercial in nature, (2) refused to find that Copper Beech had acted in bad faith, and, therefore, refused to remand the matter to the referee to determine damages on its bad faith claim, and (3) rejected the referee's report and findings, and thereafter denied its motion for consideration without first granting it an opportunity to be heard.

[8] On cross appeal, Copper Beech and Rudey claimed that the court improperly (1) determined that there was a sufficient basis in the evidence to support the referee's conclusion that they failed to prove that the performance by TDS Painting deviated from acceptable standards in the industry for paint removal, (2) refused to remand the matter to the referee for further proceedings to determine the alleged damages suffered by them due to the failure of TDS Painting to comply with the HIA and TDS Painting's resulting CUTPA violation, and (3) refused to conduct further proceedings to determine the appropriate award of attorney's fees to be made to them in light of the finding that TDS Painting had violated CUTPA.

render judgment consistent with the report of the attorney trial referee."[9] Id., 755.

On remand to the trial court, TDS Painting filed a motion to have the court refer the matter to the referee so that the referee could complete proceedings relating to attorney's fees and costs.[10] The court granted that motion on December 4, 1997. Copper Beech then filed a motion for reconsideration or articulation of the December 4, 1997 order, arguing that the order was ambiguous in light of our 1997 rescript. The motion was denied on December 16, 1997. Copper Beech then filed a motion to dismiss for lack of subject matter jurisdiction, arguing, on the basis of our rescript order, that the trial court no longer had jurisdiction to remand the matter to the referee for consideration regarding attorney's fees and costs. Copper Beech also filed a motion to recuse the referee, arguing that certain letters written by the referee to the trial court and the case flow office indicated that the referee was biased.

On November 24, 1998, the court issued a supplemental memorandum of decision. The court rendered judgment in favor of TDS Painting in the amount of $23,969.71, representing the balance due on the contract, as well as $83,910 for attorney's fees. The court also denied the motion to recuse, finding that the letters sought only clarification as to scheduling matters and

---

[9] In its cross appeal, Copper Beech requests that we reconsider our ruling in *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, supra, 45 Conn. App. 743, that the court improperly rejected the referee's finding that the Copper Beech property was commercial in nature and, therefore, that the HIA was not applicable. Because that precise issue was decided against Copper Beech in the earlier appeal, we conclude that Copper Beech's claim is barred by the doctrine of res judicata. See *Honan* v. *Dimyan*, 63 Conn. App. 702, 778 A.2d 989, cert. denied, 258 Conn. 942, 786 A.2d 430 (2001).

[10] During a separate hearing on April 17, 1995, the referee determined that TDS Painting's claimed "costs" included telephone and facsimile charges, postage, computer research, photocopies, transcripts, court reporter fees, messenger fees, overnight mail charges, and expert and subpoena fees.

did not rise to the level of bias that merited disqualification. The court reiterated its remand to the referee for a "final recommendation as to 'costs of collection' . . . ." The court ruled, however, that our remand order precluded consideration of any of TDS Painting's attorney's fees and costs incurred after the referee's original report in February, 1995.

The referee issued a supplemental report concerning costs of collection on May 6, 1999. The referee recommended that TDS Painting should be permitted to recover from Copper Beech only its costs of collection valued at $19,919.36. The referee also found that TDS Painting had incurred additional costs of $3109.95 following the issuance of his original report. The referee, however, determined that the additional $3109.95 would be outside the scope of this court's remand order because this court ordered entry of judgment consistent with the original report, and the additional $3109.95 was incurred after that date.

On May 17, 1999, Copper Beech filed a motion to correct the referee's supplemental report concerning costs of collection. TDS Painting filed an opposition to the motion to correct. The referee on August 19, 1999, issued his ruling on the motion to correct and noted that a statement in the supplemental report that he previously had recommended judgment in favor of TDS Painting in the amount of $57,894.71 was an inaccurate figure in light of the remand order. Pursuant to Practice Book § 19-14, Copper Beech and TDS Painting thereafter objected to the acceptance of the supplemental report. Copper Beech also excepted to the report pursuant to Practice Book (1999) § 19-13. TDS Painting on December 30, 1999, filed a motion to remand to the referee the issue of postjudgment interest and a renewed motion for postjudgment attorney's fees.

On January 4, 2000, the court issued a supplemental memorandum of decision and purported to render a

final judgment in this matter. In that memorandum, the court rejected Copper Beech's objections to the referee's supplemental report. The court accepted the referee's recommendation as to costs of collection and rendered a supplemental judgment in the amount of $19,919.36 for TDS Painting's costs of collection.

TDS Painting thereafter filed a motion to open the January 4, 2000 judgment. In doing so, TDS Painting argued that (1) the judgment failed to include terms necessary for a foreclosure judgment of the mechanic's lien as required by the referee's report,[11] (2) the court's judgment did not award damages of $33,925 to TDS Painting pursuant to counts two and three (unjust enrichment and quantum meruit claims), and (3) the judgment failed to award postjudgment interest and postjudgment attorney's fees.

On April 18, 2000, the court denied TDS Painting's motion to open, stating that the judgment was not required to contain details of the foreclosure, that this court's remand order "specifically denied" an award of $33,925, and that postjudgment attorney's fees and interest were outside the scope of the remand order.

On May 8, 2000, TDS Painting appealed from the supplemental judgment and the court's denial of its motion to open. Copper Beech filed a cross appeal on May 15, 2000, from the supplemental judgment.

On April 23, 2001, we dismissed the appeal and cross appeal sua sponte for lack of a final judgment because

---

[11] The referee's report states in relevant part: "[TDS Painting] may proceed to enforce its mechanic's lien upon the entry of judgment in this matter by the court. However, Copper Beech correctly pointed out that the description of real property subject to the lien is overbroad in that it extends to Goose and White Rock Islands, upon which TDS [Painting] performed no work. Copper Beech filed a motion to discharge the lien in 1991 but did not press it. A foreclosure of the lien should be restricted to the mainland portion of Copper Beech Farms, and TDS [Painting] should release the remainder of the premises from the mechanic's lien."

the trial court had not yet rendered a final judgment of foreclosure. On June 19, 2001, TDS Painting filed a motion for foreclosure by sale. Copper Beech opposed the motion, arguing that the lien was invalid and that the court improperly had enlarged the damages award by $19,919 for costs of collection. The court granted TDS Painting's motion for foreclosure by sale on June 26, 2001, and ordered the sale to take place at noon on September 29, 2001.

On July 3, 2001, TDS Painting filed an appeal, challenging the court's supplemental judgment after remand, the court's ruling on TDS Painting's motion to open the judgment and the judgment of foreclosure by sale. Copper Beech filed a cross appeal also challenging the supplemental judgment after remand, the ruling on the motion to open and the judgment of foreclosure by sale.

I

APPEAL

In its appeal, TDS Painting claims (1) that the court misinterpreted our remand. Specifically, TDS Painting argues that the court improperly failed to award $33,925 pursuant to the referee's ruling under counts two and three of TDS Painting's complaint. TDS Painting also claims that the court (2) improperly refused to allow the referee to consider TDS Painting' motion for postjudgment interest, and (3) misinterpreted our remand and refused to order the referee to consider postjudgment attorney's fees and costs of collection. We agree.

A

TDS Painting first claims that the court misinterpreted our remand order and thereby disallowed its recovery of "extra" damages in the amount of $33,925, which were awarded by the referee with respect to counts two and three of TDS Painting's complaint. Spe-

cifically, TDS Painting argues that the court misinterpreted footnote three in our 1997 opinion, *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, supra, 45 Conn. App. 748 n.3, construing it to mean that the trial court was directed to remand the matter to the referee for the referee's final recommendation only as to costs of collection.[12] That ruling, TDS Painting argues, resulted in the court's exclusion of $33,925 for extra services. We agree with TDS Painting that the court improperly interpreted our remand and that it should not have excluded the $33,925. We therefore reverse the judgment of the trial court on that issue.

The following additional facts are relevant to the analysis of TDS Painting's claim. On April 10, 1995, Copper Beech filed a motion to correct, requesting corrections to findings of fact and conclusions of law. The referee, on October 30, 1995, issued his ruling on the motion and denied all but two of Copper Beech's requested corrections.[13] As to the conclusions of law in his ruling on Copper Beech's motion to correct, the referee stated that "[a]ll requested corrections are

[12] *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, supra, 45 Conn. App. 748 n.3, states that TDS Painting "claimed that it was owed $33,925 for the extra services performed outside the scope of the written contract. The referee's recommendation, excluding these extra services, was that TDS [Painting] was entitled to recover under count one for the balance on its written agreements with Copper Beech in the total amount of $23,969.71."

[13] In its motion to correct, Copper Beech requested that the referee correct his proposed finding number thirty-two, which stated that "[o]f the $58,000 TDS [Painting] is seeking in this litigation as payment for work performed by TDS [Painting], some $30,000 is work performed by TDS [Painting] pursuant to additional oral requests made by Mr. Rudey outside the scope of any written contract." The basis for Copper Beech's request for the correction was that "[i]n the [referee's] report, the court concludes that Mr. Rudey asked TDS [Painting] to do work 'outside the contract' . . . This proposed finding merely echoes this finding and specifies the details by virtue of the uncontroverted evidence, including admissions by Mr. Freitag . . . that the extras [are] not covered by any contract for which he seeks to collect . . . $33,925."

denied, provided, however, that in light of the ruling with respect to finding of fact number thirty-two . . . [TDS Painting's] remedy under the *first count* of the complaint is restricted to the contract damages and not the charges for the extra work." (Emphasis added.)

On March 4, 1996, the court rendered judgment rejecting the referee's report. The court determined that the HIA barred TDS Painting's claims. TDS Painting appealed from that decision. In our 1997 opinion, we indicated that "[a]s *modified,* the referee's recommendation stated that TDS [Painting] was entitled under count one to the amount due under the written contracts, but not with respect to the extra services performed by TDS [Painting] at the oral request of Copper Beech." (Emphasis added.) Id., 748. We reversed the trial court's ruling on the issue of the applicability of the HIA barring TDS Painting's claims. In our rescript, we stated: "The judgments are reversed and the case is remanded with direction to render judgment consistent with the report of the attorney trial referee." Id., 755.

On remand, the court, in its supplemental memorandum of decision, rendered judgment in favor of TDS Painting in the amount of $23,969.71 and in the amount of $83,910 for attorney's fees. The court then remanded the matter to the referee to obtain a final recommendation as to "costs of collection," as distinguished from taxable costs.

To determine whether the court properly construed our remand order, we must set forth the proper standard of review. "Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . It is the duty of the trial court on remand to comply strictly

with the mandate of the appellate court according to its true intent and meaning. . . . *The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein.* . . . We have rejected efforts to construe our remand orders so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citations omitted; emphasis added.) *Higgins* v. *Karp*, 243 Conn. 495, 502–503, 706 A.2d 1 (1998).

It appears that the confusion arose out of footnote three in *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, supra, 45 Conn. App. 743, because of the precise language used in the referee's October 30, 1995 ruling on Copper Beech's motion to correct. In that ruling, the referee stated that "[a]ll requested corrections are denied, provided, however, that in light of the ruling with respect to finding of fact number thirty-two . . . [TDS Painting's] remedy under the first count of the complaint is restricted to the contract damages and not the charges for the extra work." That statement concerns only the first count, contract damages, and does not concern counts two or three for which the referee awarded $33,925. In *TDS Painting & Restoration, Inc.,* we stated that "[a]s *modified,* the referee's recommendation stated that TDS [Painting] was entitled under count one to the amount due under the written contracts, but not with respect to the extra services performed by TDS [Painting] at the oral request of Copper Beech." (Emphasis added.) Id., 748. That is, we were speaking only with respect to the modified referee's report, which clearly states that only finding of fact number thirty-two was modified and that that

modification was limited to count one of the complaint. The modification did not limit any damages under either counts two or three.[14] Our rescript, therefore, stating that "[t]he judgments are reversed and the case is remanded with direction to render judgment consistent with the report of the attorney trial referee;" id., 755; referred to the original referee's report of February 7, 1995, and the modified referee's report dated October 30, 1995. Again, the modification only concerned count one and no other count. The $33,925 awarded under counts two and three was neither modified nor limited by our 1997 opinion or rescript.

Applying our standard of review to determine whether the trial court properly construed our 1997 remand order, we conclude that the court failed to comply strictly with this court's rescript according to the rescript's plain meaning. The rescript should not be read alone and must be read in conjunction with the opinion. In doing so, it is clear that in our rescript, we relied on the referee's report along with the referee's ruling on Copper Beech's motion to correct. Considering the clear import of the rescript, the court should have limited count one of the complaint to contract damages only, but permitted the awarding of $33,925 for damages under counts two and three. Therefore, on that issue, we reverse the judgment of the trial court and order that $33,925 be awarded to TDS Painting under counts two and three pursuant to the referee's determinations.

[14] There is no indication within the referee's report that the referee intended to modify or to reduce his original recommended judgment of $57,894.71. That is, the referee's finding that TDS Painting was entitled to both $23,969.71 under the written contract and $33,925 for "extra" work never was modified by the referee to exclude the $33,925 award. The total judgment recommended by the referee, then, amounts to $164,834.02, exclusive of postjudgment interest and costs.

B

TDS Painting's second claim is that the court improperly precluded the referee from considering TDS Painting's motion for postjudgment interest. In support of its claim, TDS Painting argues that the court improperly cast its motion for remand to the referee for the awarding of postjudgment interest as a motion for remand to the referee for the awarding of prejudgment interest. Further, TDS Painting argues that if we conclude that postjudgment interest may be awarded, interest should begin to accrue from March 4, 1996, the date of the original incorrect trial court judgment. We agree that the court improperly refused to direct the referee to consider TDS Painting's motion for postjudgment interest.

The following additional facts are relevant to the analysis of TDS Painting's second claim. On December 30, 1999, TDS Painting filed a motion to remand the matter to the referee on the issue of awarding postjudgment interest pursuant to General Statutes § 37-3a.[15] In support of its motion, TDS Painting argued that because an award of postjudgment interest, and the date such interest should begin to run, is factual in nature, the referee was the proper fact finder. The court issued its supplemental memorandum of decision, dated January 4, 2000, in which it agreed with the referee's recommendation as to costs of collection. It did not, however, address TDS Painting's motion to remand on postjudgment interest.

On January 20, 2000, TDS Painting filed a motion to open the court's January 4, 2000 supplemental judgment

---

[15] General Statutes § 37-3a provides in relevant part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ."

to increase the damages awarded by adding damages under counts two and three of the complaint and through the addition of further attorneys fees and interest. In its memorandum of decision, dated April 18, 2000, regarding TDS Painting's motion to open, the court rejected TDS Painting's request to open the judgment and to permit an award of postjudgment interest. Specifically, the court stated that "[TDS Painting] also seeks in its motion to open that this court award additional attorney's fees, costs of collection and *prejudgment* interest pursuant to General Statutes § 37-3a." (Emphasis added.) The court referred to our remand order when rendering judgment according to the referee's report. Because the court found that "[the referee's report] recommended an award to [TDS Painting] of $83,910 for attorney's fees and no *prejudgment* interest" (emphasis added) it determined that it did not have the authority on remand to direct the referee to award prejudgment interest. The court relied on *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 738, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996), to support its reasoning.

We must first determine whether it is proper to characterize the interest that TDS Painting seeks as postjudgment interest. To determine the correctness of the court's characterization of the interest sought, we must (1) define postjudgment interest and (2) determine the time during which postjudgment interest begins to accrue. Prejudgment interest, awarded pursuant to § 37-3a, runs to the date of judgment. *Paulus* v. *LaSala*, 56 Conn. App. 139, 149–50, 742 A.2d 379 (1999) (also stating that "paucity of cases that specifically decide the termination date of the running of statutory prejudgment interest is more a function of a failure to litigate the obvious than a failure to raise and decide the issue"), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). It follows, therefore, that postjudgment interest, also

awarded pursuant to § 37-3a, begins to run from the date of judgment.

In its December 30, 1999 motion for remand to the referee for the awarding of postjudgment interest, TDS Painting sought interest running from the original March, 1996 judgment of the trial court. Consequently, we determine that TDS Painting seeks postjudgment interest. Accordingly, we conclude that the court improperly cast TDS Painting's motion for postjudgment interest as a motion for prejudgment interest and abused its discretion in failing to permit the referee to consider TDS Painting's request.

That raises the question, however, of what constitutes the "date of judgment" when an appeal has been taken from the trial court's judgment. "[W]hen there is a rescript that modifies the judgment, postjudgment interest is to run from the date of the original judgment. It should be as if the correct judgment had been issued by the original trial court, with the interest running forward from that date." *Patron* v. *Konover*, 43 Conn. App. 645, 652, 685 A.2d 1133 (1996), cert. denied, 240 Conn. 911, 690 A.2d 400 (1997).

Next, we must determine whether postjudgment interest is available to TDS Painting. Unfortunately, however, we cannot make that determination, as it is a factual question. See *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 738. "A decision to deny or grant postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the trial court." (Internal quotation marks omitted.) *Bower* v. *D'Onfro*, 45 Conn. App. 543, 550, 696 A.2d 1285 (1997), citing *O'Hara* v. *State*, 218 Conn. 628, 643, 590 A.2d 948 (1991); see also *Maluszewski* v. *Allstate Ins. Co.*, 34 Conn. App. 27, 38, 640 A.2d 129 (decision to grant interest, in general, is equitable determination), cert. denied, 229 Conn. 921, 642 A.2d 1214 (1994). "Whether interest

may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) *Bower* v. *D'Onfro*, supra, 551. The determination of whether interest pursuant to § 37-3a should be awarded is a question for the trier of fact. *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 738. In this case, the trier of fact is the referee. Because the court interpreted the remand order from this court narrowly, however, the referee never was given the opportunity to consider the issue of postjudgment interest. We therefore reverse the judgment of the trial court on the issue of postjudgment interest and remand the matter to that court, which shall remand the matter to the referee for his determination on the issue of postjudgment interest.

If in fact the referee awards postjudgment interest, such interest shall be calculated from the date of the final judgment to the date of payment. See *O'Leary* v. *Industrial Park Corp.*, 211 Conn. 648, 653–54, 560 A.2d 968 (1989). Our Supreme Court clearly has established that, as a matter of fairness,[16] when a party seeking

[16] To understand whether it is fair to award postjudgment interest from the date of the original judgment, we must analyze *Pascack Valley Bank & Trust Co.* v. *Ritar Ford Sales, Inc.*, 6 Conn. Cir. Ct. 646, 295 A.2d 667 (1972), and *Gary Excavating Co.* v. *North Haven*, 163 Conn. 428, 311 A.2d 90 (1972). First, in *Pascack Valley Bank & Trust Co.*, the plaintiff sought damages for the conversion of an automobile that the plaintiff claimed as the assignee of a conditional sale contract and note. *Pascack Valley Bank & Trust Co.* v. *Ritar Ford Sales, Inc.*, supra, 647. The trial court rendered judgment for the defendant on July 30, 1968. Id. The plaintiff appealed to the Appellate Division of the Circuit Court. Id. The Appellate Division remanded the case on March 23, 1970, for proper findings and additional proceedings. Id. Thereafter, the parties agreed to waive further arguments and to permit the case to be decided on appeal solely on the record. Id. The Appellate Division directed a judgment for the plaintiff together with interest on the judgment "from the date of the original judgment in the trial court," which was July 30, 1968. Id. The appellate decision was announced on December 31, 1970. Id. The defendant appealed, claiming that the interest on the judgment was recoverable only from December 31, 1970, and not from the original erroneous judgment date of July 30, 1968. Id. The Appellate Division held

postjudgment interest cannot be said to have wrongfully

that interest properly accrued from July 30, 1968, as if the trial court properly had rendered a judgment in favor of the plaintiff, as it should have done initially. Id., 648.

In *Gary Excavating Co.*, an appeal arose out of a contract dispute in which the plaintiff sought additional compensation. *Gary Excavating Co.* v. *North Haven*, supra, 163 Conn. 429. The dispute went to arbitration, and on June 23, 1969, an arbitration panel awarded the plaintiff $150,000. Id. On September 3, 1970, the plaintiff sought to vacate the arbitration award. Id. The Superior Court granted the motion, and the award was vacated. Id. The defendants appealed, and on March 2, 1971, our Supreme Court reversed the order to vacate, setting aside the judgment and ordering the Superior Court to render judgment confirming the arbitration award of $150,000. Id. On November 26, 1971, the plaintiff sought to confirm the arbitration award and sought interest from June 23, 1969, the date of the original award, or, in the alternative, from March 2, 1971, the date of the Supreme Court's mandate. Id., 429–30. The Superior Court rendered judgment for $150,000 on December 3, 1971, but refused to award interest on that sum. Id., 430. The plaintiff appealed from the Superior Court's refusal to order the payment of interest. The Supreme Court, on appeal, held that the plaintiff was entitled interest "from the date of judgment on the award and . . . the effective date of the judgment [wa]s the date [of] . . . our mandate 'to render judgment confirming the award.' " Id., 432. That date was, March 2, 1971. Id.

Although the parties in this action appear to stress that only one of the cases, *Pascack Valley Bank & Trust Co.* or *Gary Excavating Co.*, controls, in fact, both are consistent with one another. In *Gary Excavating Co.*, the party seeking to vacate the arbitration award caused the delay and the accrual of interest. In that case, had the plaintiff not sought to vacate the arbitration panel's award to him, interest on the award would not have accrued for a two year period. Therefore, as a matter of fairness, the accrual of interest appropriately was determined to coincide with the date of the mandate from our Supreme Court. By contrast, in *Pascack Valley Bank & Trust Co.*, the party seeking postjudgment interest was appealing from an erroneous judgment and had done nothing to delay the rendering of judgment or to extend the interest accrual period. Therefore, the Appellate Division of the Circuit Court, as a matter of fairness, determined that "[i]t is only just that interest as ordered by this court on the appeal be computed from such date. The plaintiff cannot be said to have wrongfully delayed the matter." *Pascack Valley Bank & Trust Co.* v. *Ritar Ford Sales, Inc.*, supra, 6 Conn. Cir. Ct. 648.

We are not convinced by Copper Beech's argument in its principal brief that "*Pascack Valley Bank & Trust Co.* can be distinguished in that the court in *Pascack Valley Bank & Trust Co.* simply modified a judgment for the plaintiff; it did not reverse and remand for a new judgment as in this case." A review of the facts in *Pascack Valley Bank & Trust Co.* clearly indicates that the Appellate Division of the Circuit Court reversed the judg-

delayed the matter and "where there is a rescript that modifies [a] judgment, postjudgment interest is to run from the date of the original judgment. It should be as if the correct judgment had been issued by the original trial court, with the interest running from that date." *Patron* v. *Konover*, supra, 43 Conn. App. 652, citing *Mazzotta* v. *Bornstein*, 105 Conn. 242, 244, 135 A. 38 (1926); see also *Gary Excavating Co.* v. *North Haven*, 163 Conn. 428, 311 A.2d 90 (1972); *Weed* v. *Weed*, 25 Conn. 494 (1857); *Pascack Valley Bank & Trust Co.* v. *Ritar Ford Sales, Inc.*, 6 Conn. Cir. Ct. 646, 295 A.2d 667 (1972). Therefore, for those calculations, the date of the final judgment is March 4, 1996. See *Patron* v. *Konover*, supra, 652.

We conclude that the court abused its discretion in refusing to permit the referee to consider the issue of postjudgment interest pursuant to TDS Painting's December 30, 1999 motion to remand for consideration of postjudgment interest. We conclude that TDS Painting sought postjudgment interest and remand the matter to the court with direction to remand the matter to the referee for his determination as to whether postjudgment interest should be awarded and, if so, the amount of postjudgment interest to be awarded.

## C

TDS Painting next claims that the court misinterpreted our remand and refused to order the referee to consider postjudgment attorney's fees and costs of collection. In support of its claim, TDS Painting argues that after the referee initially recommended the awarding of attorney's fees and requested additional hearings concerning costs of collection, the court on remand improperly refused to award those fees. We agree.

ment and did not merely modify the judgment, as suggested by Copper Beech. Consequently, Copper Beech's remaining arguments as to the matter are without merit.

We briefly restate the procedural background to TDS Painting's claim. On October 30, 1995, the referee issued a ruling regarding attorney's fees, concluding that TDS Painting was entitled to recover $83,910 for legal services through February, 1995. The court issued a judgment and a supplemental judgment. Subsequently, TDS Painting filed a motion to open the January 4, 2000 supplemental judgment. In doing so, TDS Painting argued, inter alia, that the judgment failed to award postjudgment attorney's fees. The court, on April 18, 2000, denied TDS Painting's motion to open, stating in relevant part that postjudgment attorney's fees and interest were outside the scope of the remand order. In essence, Copper Beech implicitly argues that "unless we specifically set forth, as part of the rescript, all statutorily mandated postjudgment awards, such awards are precluded. Indeed, adoption of [that] argument would have ramifications far beyond this case." *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 66, 689 A.2d 1097 (1997).

We must first set forth the proper standard of review. At the outset, we note that "[w]ell established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. The trial court should examine the mandate and the opinion of the reviewing court

and proceed in conformity with the views expressed therein." (Internal quotation marks omitted.) *Halpern* v. *Board of Education*, 231 Conn. 308, 311, 649 A.2d 534 (1994).

Our remand orders, however, are not to be construed "so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citation omitted; internal quotation marks omitted.) *Higgins* v. *Karp*, supra, 243 Conn. 503. The relevant matters in this case include postjudgment attorney's fees and costs.

With respect to determining the propriety of a trial court's refusal to award postjudgment attorney's fees, we note that "Connecticut case law follows the general rule, frequently referred to as the 'American Rule,' that attorney's fees are not allowed to the prevailing party as an element of damages unless such recovery is allowed by statute or contract. . . . General Statutes § 52-249 (a) succinctly and unambiguously provides for the allowance of attorney's fees in actions for foreclosure of mortgages or liens."[17] (Internal quotation marks omitted.) *Original Grasso Contruction Co.* v. *Shepherd*, 70 Conn. App. 404, 418, 799 A.2d 1083, cert. denied, 261 Conn. 932, 806 A.2d 1065 (2002). Therefore, until TDS Painting received a favorable judgment, that is, on remand, TDS Painting never had the opportunity to

---

[17] General Statutes § 52-249 (a) provides: "The plaintiff in any action of foreclosure of a mortgage or lien, upon obtaining judgment of foreclosure, when there has been a hearing as to the form of judgment or the limitation of time for redemption, shall be allowed the same costs, including a reasonable attorney's fee, as if there had been a hearing on an issue of fact. The same costs and fees shall be recoverable as part of the judgment in any action upon a bond which has been substituted for a mechanic's lien."

seek an award of attorney's fees. *Rizzo Pool Co.* v. *Del Grosso*, supra, 240 Conn. 66–67; see also *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 777, 717 A.2d 150 (1998) ("amount of an appellate fee award cannot, in any case, be determined on appeal"). In fact, many of the attorney's fees at issue did not become applicable until TDS Painting received judgment in its favor, post-appeal.

"It is elementary that, whether fees and costs are a matter of right or discretion, they ordinarily are awarded to the party that prevails in the case . . . ." *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 18, 730 A.2d 1128 (1999). The decision to award such fees "rests, in the first instance, in the exercise of discretion by the trial court." *Sorrentino* v. *All Seasons Services, Inc.*, supra, 245 Conn. 777. Accordingly, because the issue of postjudgment attorney's fees could not have been resolved by this court, the trial court improperly refused to direct the referee to consider TDS Painting's motion for postjudgment attorney's fees.[18]

With respect to postjudgment costs of collection, the court noted, in its January 4, 2000 supplemental memorandum of decision, that postjudgment costs, or "costs relating to the appeal," were not available to TDS Painting because in our rescript we "did not indicate that

---

[18] Copper Beech argues, inter alia, that TDS Painting waived its claims for postjudgment attorney's fees by not complying with Practice Book § 11-21. We disagree. That section provides in relevant part: "If appellate attorneys' fees are sought, motions for such fees shall be filed with the trial court within thirty days following the [appellate] decision disposing of the underlying appeal. . . ." Practice Book § 11-21. It also provides: "Nothing in this section shall be deemed to affect an award of attorney's fees assessed as a component of damages." Id. Section 11-21 is inapplicable as a defense to TDS Painting's claim. First, TDS Painting sought not only appellate attorney's fees; see id.; but all postjudgment attorney's fees. Moreover, the attorney's fees are assessed as a component of damages. Thus, the language in the last sentence of the section makes clear that Practice Book § 11-21 is inapplicable.

the referee or [the trial] court should calculate costs incurred in connection with the appeal to th[is] court." Copper Beech has not pointed to any cases, and our research has revealed none, in which costs were specifically awarded to the prevailing party as part of the rescript. See *Rizzo Pool Co.* v. *Del Grosso,* supra, 240 Conn. 67. The court was not precluded from considering the issue of costs and, therefore, the court improperly refused to direct the referee to consider postjudgment costs.

## II

## CROSS APPEAL

Copper Beech, on cross appeal, claims that the court improperly (1) remanded the case to the referee to increase TDS Painting's damages award or, in the alternative, (2) adopted the recommendation of the referee as to the increased damages award and (3) rendered judgment on TDS Painting's lien. We affirm the judgment of the trial court as to those claims.

## A

Copper Beech first claims that the court improperly remanded the case to the referee and increased TDS Painting's damages award. In support of its claim, Copper Beech argues that the extra damages that the court awarded to TDS Painting arose from counts two and three of the original complaint. Copper Beech further argues that we ordered the court to render judgment in accordance with the modified, October 30, 1995 referee's report, allegedly limiting the report's recommendation to count one only. Thus, Copper Beech argues that the award with respect to counts two and three is improper as it has been decided. Essentially, Copper Beech argues that we resolved that issue in ordering that judgment enter according to the referee's report on count one only. As discussed in part I A, however, we

remanded the matter with direction to render judgment consistent with *both* of the referee's reports. Accordingly, and consistent with our discussion in part I A, we affirm the judgment of the trial court.

B

Copper Beech also claims that the court improperly adopted the recommendation of the referee as to the increased damages award. Specifically, Copper Beech argues that TDS Painting failed to allocate the costs between the two cases and the counts involved.[19] We disagree.

TDS Painting's damages as allocated by the referee involved costs associated with pursuing its claims and defending against the counterclaims. The referee stated in his May 6, 1999 supplemental report concerning costs of collection that "[TDS Painting] contends, and the record contains no countervailing evidence, that all of these [$19,919.36 in] costs were incurred in advancing

_____

[19] Copper Beech also argues that TDS Painting brought a foreclosure action and, therefore, TDS Painting's costs were strictly limited to those recoverable under General Statutes §§ 52-249 and 52-257. In essence, Copper Beech argues that parties may not, by agreement, provide for costs greater than the standard amount established by statute. We disagree. "The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon . . . ." (Internal quotation marks omitted.) *F.B. Mattson Co.* v. *Tarte*, 247 Conn. 234, 237–38, 719 A.2d 1158 (1998). Our mechanic's lien statute's "provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials." (Internal quotation marks omitted.) Id., 238. Our Supreme Court has stated that "[t]he plaintiff is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both." (Internal quotation marks omitted.) *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 266, 708 A.2d 1378 (1998); see also *Connecticut National Bank* v. *N.E. Owen II, Inc.*, 22 Conn. App. 468, 476, 578 A.2d 655 (1990) (holding that in foreclosure on note containing provision for attorney's fees, terms of note, rather than statutory provisions, control). Having ordered judgment in favor of TDS Painting on the mechanic's lien, we conclude that the court properly awarded costs as agreed to by the parties in the underlying contract.

[TDS Painting's] collection claims against [Copper Beech]. However, it is also the case that in order to recover, [TDS Painting] was required to defeat the counterclaims so that many of the costs were incurred for a dual purpose." The referee concluded that "nothing in the record discloses that any portion of the $19,919.36 is not a cost incurred in collecting the debt at issue . . . ." The referee also concluded that *Ernst Steel Corp.* v. *Reliance Ins. Co.*, 13 Conn. App. 253, 536 A.2d 969 (1988), the only case cited by Copper Beech to support its argument, is distinguishable.[20]

"A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney

---

[20] Copper Beech does not dispute that TDS Painting's prosecution of its claims and its defense of the counterclaims were closely intertwined. Instead, Copper Beech contends that the burden of differentiating offensive and defensive costs rests with TDS Painting, and it relies on *Ernst Steel Corp.* v. *Reliance Ins. Co.*, supra, 13 Conn. App. 253, in support of that proposition. *Ernst Steel Corp.* involved an award of counsel fees to a subcontractor against a general contractor under the provisions of General Statutes § 49-41a. That statute authorizes attorney's fees for a prevailing subcontractor against a general contractor who refuses to deposit the disputed contract balance into an interest bearing account. Under circumstances in which the plaintiff's counsel's effort on the complaint and on the defendant general contractor's counterclaim were intertwined closely, the trial court awarded counsel fees on the complaint and refused to award fees for defense of the counterclaim, and this court affirmed the judgment.

In *Ernst Steel Corp.*, we were not confronted with the award of costs under a commercial contractual arrangement, as in the present case, in which Copper Beech agreed to pay "any and all costs of collection if placed with an attorney for collection." Because nothing in the record discloses that any portion of the $19,919.36 was not a cost incurred in collecting the debt at issue, the ruling in *Ernst Steel Corp.* is not a bar to TDS Painting's contractual recovery. That is, once the prevailing party has demonstrated that designated costs reasonably were incurred in advancing the collection effort, the costs are recoverable unless the defendant can demonstrate that the costs were attributable to another purpose. Copper Beech has failed to do so.

trial referees." (Internal quotation marks omitted.) *Elgar* v. *Elgar*, 238 Conn. 839, 848, 679 A.2d 937 (1996). The decision of the trier of fact with regard to damages will be affirmed unless it is clearly erroneous; there must be a reasonable basis in the evidence to support the award. See *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 68–69, 717 A.2d 724 (1998).

We agree that *Ernst Steel Corp.* does not control the issue. In light of the referee's findings that no part of the record served to contradict his conclusion that all of the $19,919.36 was incurred in pursuing collection, we conclude that the court's adoption of the referee's recommendation on damages was not clearly erroneous.[21]

C

Copper Beech's third claim on cross appeal is that the court improperly rendered judgment on TDS Painting's lien. In support of its claim, Copper Beech argues that in including the two islands, the lien was overinclusive and misleading, that TDS Painting acted in bad faith, and, therefore, that the lien was invalid. Copper Beech cites *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, 230 Conn. 807, 816, 646 A.2d 812 (1994), in support of that conclusion.

---

[21] Copper Beech also argues that the court impermissibly shifted the burden from TDS Painting to Copper Beech to quantify those costs associated with pursuing various specific claims and defenses. That argument is meritless. As the referee stated, "[O]nce the prevailing plaintiff has demonstrated that designated costs were reasonably incurred in advancing the collection effort, the costs are recoverable unless the defendant can demonstrate that the costs were attributable to another purpose. No such demonstration was made here." It is clear that the referee properly evaluated the evidence with respect to TDS Painting's burden. The statement that Copper Beech could, but did not, refute TDS Painting's evidence did not impermissibly shift the burden to Copper Beech.

TDS Painting argues, inter alia, that Copper Beech failed to pursue its January 24, 1992 motion for discharge of the lien and, therefore, we essentially should deem Copper Beech's claim abandoned. We agree with TDS Painting. We find it convincing that Copper Beech failed to press its motion to discharge the mechanic's lien for more than ten years, in addition to failing to raise the issue at any other time during this action, despite the fact that the court never ruled on the motion. See *Connecticut National Bank* v. *Oxenhandler*, 30 Conn. App. 541, 549, 621 A.2d 300 (where defendant failed to press court for ruling on motion, court was under no obligation to address it), cert. denied, 225 Conn. 924, 625 A.2d 822 (1993). In light of our review of the record, we also agree that Copper Beech has not shown prejudice as a result of the inclusion of the two islands in the lien. Therefore, we conclude that Copper Beech abandoned its claim, and we decline to address it on appeal.

On the plaintiff's appeal, the judgment is reversed only as to counts two and three of the complaint and as to the denial of postjudgment interest and attorney's fees, and the case is remanded with direction to render judgment in the plaintiff's favor in the amount of $33,925 in damages on counts two and three of the complaint, to remand the matter to the attorney trial referee for further proceedings (1) on whether postjudgment interest should be awarded, and, if so, the amount of postjudgment interest to be awarded, and (2) to consider the plaintiff's motion for attorney's fees and to set a new sale date. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.